## 39197. MULKEY v. THE STATE.

MARSHALL, Presiding Justice.

Harold Mulkey appeals from his conviction of malice murder, for which he received a life sentence.

1. The first enumerated error is that the court erred in failing to grant his motion to sever his trial from that of his co-defendants, Earl Green and Bo Salmon.

It is discretionary with the trial judge as to whether to jointly or separately try defendants who are jointly indicted for a capital offense when the state has waived the death penalty. OCGA § 17-8-4 (Code Ann. § 27-2101). The trial judge's denial of the motion to sever will not be disturbed unless the defendant can make a clear showing of prejudice. *Depree v. State,* 246 Ga. 240, 241 (1) (271 SE2d 155) (1980) and cits. "[T]he burden is on the defendant . . . to do more than raise the possibility that a separate trial would give him a better chance of acquittal." *Cain v. State,* 235 Ga. 128, 129 (218 SE2d 856) (1975) and cit.

Here, the evidence clearly showed the appellant's participation in the conspiracy and at least one unsuccessful attempt to perpetrate murder, and his participation in the actual murder itself. There was testimony from a state's witness that the appellant admitted that he "blew the boy's brains out." Additionally, another state's witness testified that the appellant had been with the victim on the same evening in which the victim was killed, and that the appellant had in his possession a .30 caliber rifle. Finally, co-defendant Green took the witness stand in the trial, yet counsel for appellant did not even choose to cross-examine him. Under these circumstances, the record demonstrates that the appellant has not suffered prejudice or actual

harm as a result of the joint trial.

2. The second enumerated error is the trial judge's alleged erroneous restriction of defense counsel's cross-examination of state's witness Beverly Ensley, and the limitation of his direct examination of an FBI agent who was allegedly called to support the appellant's contention that witness Ensley had entered into an agreement with the government in regard to other cases.

A review of the transcript shows that, upon cross-examination of witness Ensley, defense counsel inquired whether or not she had cooperated with the FBI in a number of other cases. She answered that she had. Following that inquiry and pursuant to the state's objection, the trial judge ruled that defense counsel could not question the witness pertaining to her cooperation with the government in other cases, unless the defense could make a showing of a nexus with a present case. No such showing was made.

Later in the trial, defense counsel indicated his desire to call two FBI agents to testify pertaining to Ms. Ensley's alleged involvement in a federal offense and alleged accommodations or agreements which had been made between her and the federal government. A hearing was held outside of the presence of the jury, and FBI Agent Poe refused to answer questions on the above areas, but stated that he knew for a fact that she had made no deal with the government in regard to any state testimony. He refused to answer when questioned about any pending federal investigations, and the trial court refused to direct him to answer, holding that any such questions were actually irrelevant to the case at bar. In an abundance of caution, the trial judge made a specific inquiry to the state's attorney as to whether or not any promises or agreements had been made with Ms. Ensley with respect to her testimony against the appellant and his co-defendant. The district attorney responded that, to his knowledge, no such agreements had been made.

Of course, exposing potential bias on the part of a witness and witness motivation for testifying, is a proper and important function of cross-examination. *Hines v. State,* 249 Ga. 257 (2) (290 SE2d 911) (1982) and cits. "A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness *as they may relate directly to issues or personalities in the case at hand.*" (Emphasis supplied.) *Hines v. State,* supra, p. 260. In the case at bar, however, the information sought related to issues and personalities in other cases. Moreover, the jury heard the witness' testimony that she had engaged in cooperation with the FBI in a number of other cases. There was no improper limitation of the appellant's right to show relevant evidence of bias which relates to his case.

3. The third enumeration of error is the denial of the appellant's motion for a mistrial based upon an alleged comment on the appellant's character by the district attorney. During the direct testimony of witness Patterson, he testified that he had sold a vehicle to the appellant. On cross-examination, defense counsel inquired of Patterson whether or not the vehicle he had sold to the appellant had been stolen. On rebuttal, the district attorney asked Patterson whether the appellant knew that the vehicle Patterson sold him was stolen, to which Patterson replied, "Sure, he did; yes."

Under OCGA § 24-9-20(b) (Code Ann. §§ 38-415, 38-416), "no evidence of general bad character or prior convictions shall be admissible unless and until the defendant shall have first put his character in issue." The granting or refusal to grant a mistrial is within the discretion of the trial judge, whose decision should not be reversed on appeal absent an abuse of discretion. *Fortson v. State,* 240 Ga. 5, 6 (2) (239 SE2d 335) (1977) and cits.

Here, defense counsel first opened the door pertaining to all of the circumstances surrounding the appellant's purchase of the vehicle from Patterson by first asking the latter whether or not the vehicle had been stolen. The state's inquiry on rebuttal simply informed the jury of the true nature of that transaction. The fact that this testimony may have incidentally placed the appellant's character in issue does not render it inadmissible. *Tiller v. State,* 196 Ga. 508 (3) (26 SE2d 883) (1943).

4. The fourth enumerated error is the admission in evidence, over objection, of hearsay testimony elicited from Charlotte Salmon pertaining to conversations which the appellant had had with her husband, co-defendant and co-conspirator Bo Salmon, concerning attempts on the life of victim Ridley, and similar testimony by witness Patterson.

OCGA § 24-3-5 (Code Ann. § 38-306) provides: "After the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." "It has been held that, 'In order properly to admit the declaration of an alleged co-conspirator made during a criminal project, there must be sufficient evidence aliunde the declaration to establish the conspiracy at least prima facie and prove its existence beyond a reasonable doubt. But the trial judge having a sound discretion as to the order of proof, "if a prima facie case of conspiracy is shown from the whole evidence, the admitting of such (a declaration) is not error . . . If sufficient prima facie evidence . . . is introduced to authorize the admitting of evidence of acts and declarations of one of the alleged conspirators, ultimately it is for the jury to determine whether, from the whole evidence, a conspiracy has

been shown" beyond a reasonable doubt; and if they thus find that none has been established, it is then their duty not to consider the testimony of acts and declarations of the supposed co-conspirator which has been admitted. (Cits.)' [Cits.]" *Gunter v. State,* 243 Ga. 651, 659 (6) (256 SE2d 341) (1979).

In the case at bar, in addition to out-of-court statements made by the appellant's co-conspirators, there was additional evidence that the appellant had made an admission that he had killed the victim, Ridley. He was also observed on the night of the murder at the trailer of Beverly Ensley, in possession of a .30 caliber rifle. At that time, both Bo Salmon and the victim had accompanied the appellant, and were sitting in the appellant's truck, which was parked in front of Ensley's trailer. Several days after the shooting, the appellant made a statement that he had seen someone get shot a few days before, and that he was contemplating getting into the killing business. There was sufficient evidence to establish the conspiracy at least prima facie, so as to allow admission of the hearsay testimony concerning declarations made by the other conspirators during the pendency of the criminal project. Moreover, the objected-to testimony was also admissible to illustrate the relationship between the parties and thus motive or malice. *Gunter v. State,* 243 Ga., supra, p. 656 (3); *Griffin v. State,* 155 Ga. App. 77, 78 (2) (270 SE2d 299) (1980).

5. The fifth enumerated error is that the conviction was not supported by the evidence. A review of the record reveals ample evidence to authorize a finding that the appellant had been an active participant in a conspiracy to kill victim Ridley in order to aid his co-defendant in collecting life insurance proceeds resulting from the death of the victim. In addition to statements from appellant's own co-conspirators, there was also sufficient, additional corroborating evidence to support the jury's finding (see Divisions 1 and 4, supra). Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found Mulkey guilty of murder beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 4, 1983.

*Williams W. Keith III, R. Leslie Waycaster,* for appellant.
*Stephen A. Williams, District Attorney, Michael J. Bowers, Attorney General, Nicholas G. Dumich, Assistant Attorney General,* for appellee.