72254. MASON v. THE STATE.
(348 SE2d 754)

McMURRAY, Presiding Judge.

The defendant was indicted for two counts of theft by conversion and was tried before a jury beginning March 15, 1985. The evidence adduced at trial, construed most favorably to support the verdict, was as follows: The defendant was in the business of selling insurance as a general agent for National States Insurance Company from his office in Atlanta, Georgia. During the latter part of 1980, Mrs. Mabel Borelli, who was 71 years old, and Mr. Terrence Borelli, who was over 80 years old, responded to an advertisement sent to them in the mail concerning supplemental Medicare insurance. In response to the Borellis' interest in the supplemental insurance, the defendant went to the Borellis' home in Richmond Hill, Georgia and sold them an insurance policy. On February 5, 1981, the defendant went to the Borellis' home and, according to Mrs. Borelli's testimony, "[talked] about money" and told the Borellis that "he had at times took [sic] money from older people and . . . people he was selling insurance to . . . and that he would invest it for them." The defendant offered to

invest $10,000 of the Borellis' money, promising tax-free interest to be yielded at a rate of 15 percent per annum. The defendant told the Borellis that they would receive monthly interest payments and that they "could leave it [the principal sum] invested as long as [they] wanted, but [they] could get it back at any time." Pursuant to this agreement, the Borellis gave the defendant $10,000. The Borellis received interest payments of $125 per month for five months from the defendant through July 1981. On July 16, 1981, the defendant returned to the Borellis' home and discussed an additional investment. As a result of this conversation, Mrs. Borelli gave the defendant $10,000. In return, the Borellis were to receive monthly interest payments of $125 for 12 consecutive months, beginning August 17, 1981.

After July 1981 the defendant failed to make the monthly interest payments. In October 1981 the Borellis received $1,000 from the defendant and, during the "first part of 1982," Mrs. Borelli received $1,500 from the defendant. (Mr. Borelli died in January 1982.) No other money was received from the defendant by Mr. or Mrs. Borelli.

Evidence concerning the defendant's financial records showed that the majority of the $10,000 invested by the Borellis on July 16, 1982, which is the subject of Count 2 of the indictment, was used by the defendant to pay his house notes and to pay the defendant's business debts. From this and other evidence presented at trial, the jury returned a verdict of "not guilty" as to Count 1 of the indictment and "guilty" as to Count 2 of the indictment. The defendant's motion for new trial was denied and this appeal followed. *Held*:

1. The pivotal issue in the defendant's first enumeration of error is whether the evidence presented at trial showed that the defendant was guilty of theft by conversion, as alleged in the indictment and defined by OCGA § 16-8-4. This Code section provides in pertinent part that "[a] person commits the offense of theft by conversion when, having lawfully obtained funds . . . of another under an agreement . . . to make a specified application of such funds . . . , he knowingly converts the funds . . . to his own use in violation of the agreement. . . ." OCGA § 16-8-4 (a). In the case sub judice, the State introduced evidence which authorized a finding that the defendant was given $10,000 by the Borellis on July 16, 1981, to be used for an investment which would yield non-taxable interest at a rate of 15 percent per annum. The evidence concerning the disposition of this money showed that the defendant did not invest the $10,000 in a way so as to produce non-taxable income for the Borellis; but, instead converted the money to his own use by paying his personal debts. Consequently, the evidence adduced at trial was sufficient to convince a rational finder of fact that the defendant was guilty beyond a reasonable doubt of theft by conversion in that the defendant "lawfully obtained funds . . . of another under an agreement . . . to make

a specified application of such funds [and that] he knowingly [converted] the funds . . . to his own use in violation of the agreement . . ." OCGA § 16-8-4 (a). See *Butler v. State*, 170 Ga. App. 257, 258 (1) (316 SE2d 841); and *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

2. Alternatively, the defendant contends that the evidence showed that when he came into possession of the Borellis' $10,000 on July 16, 1981, he did not intend to make the specified application of the funds, thereby making his acquisition of the money unlawful, removing his conduct from the scope of theft by conversion alleged in the indictment. Compare OCGA §§ 16-8-4 and 16-8-3. This argument is without merit. The subjective intention to convert the funds manifested itself after July 16, 1981, when the defendant used the majority of the $10,000 to pay his personal debts. Prior to the wrongful application of the funds, the defendant had the right and responsibility to possess the Borellis' money with authority to use the funds for the "specified application"; i.e., for an investment which would produce tax-exempt income at a rate of 15 percent per annum. See *Garrett v. State*, 147 Ga. App. 666 (250 SE2d 1).

3. In his second enumeration of error the defendant contends that the trial court erred in failing to grant his motion for mistrial because the State's attorney improperly attacked his character. Upon cross-examination by the defendant's attorney, Mr. Jerry Holbrook, the deputy Insurance Commissioner for the State of Georgia, testified in pertinent part as follows: "[DEFENDANT'S ATTORNEY: The defendant] is still an insurance agent, is he not? A. As of yesterday, running through the computer, he still holds a valid insurance agent's license, yes. . . . Q. . . . And if [the defendant] were to be convicted of a felony in this court, his license would be revoked, would it not? A. If he were to be convicted in this court, yes, sir. . . . REDIRECT EXAMINATION BY [THE STATE'S ATTORNEY]: Q. Now within the last several months, was he [the defendant] continually a licensed insurance agent, or was there a time when he was prevented from doing so? A. He was continuously licensed as an agent. However, there was an administrative order issued. Q. How long was that administrative order in effect? A. Until a request for hearing was requested and a hearing set, and that tolls the revocation. Q. Do you recall about how long it was that he was not able to sell insurance in Georgia in the last several months?" Whereupon, the defendant's attorney objected and requested a hearing outside the presence of the jury. The trial court conducted a hearing outside of the jury's presence, during which defense counsel moved for a mistrial which was denied by the court.

"The granting or refusal to grant a mistrial is within the discretion of the trial judge, whose decision should not be reversed on ap-

peal absent an abuse of discretion. *Fortson v. State,* 240 Ga. 5, 6 (2) (239 SE2d 335) (1977) and cits." *Mulkey v. State,* 250 Ga. 444, 446 (3) (298 SE2d 487). In the case sub judice, the defendant's attorney "opened the door" regarding the defendant's status as a licensed insurance agent in this State. Consequently, the State's attorney was entitled to a thorough and sifting cross-examination regarding this issue. OCGA § 24-9-64. See *Phillips v. State,* 254 Ga. 370, 371 (329 SE2d 475). The fact that the defendant's insurance license was temporarily revoked by an administrative order issued by the insurance commissioner may have incidentally placed the defendant's character in issue; however, since the defendant's attorney "opened the door" to this issue, the testimony was not inadmissible. See *Mulkey v. State,* 250 Ga. 444 (3), supra. The trial court did not err in denying the defendant's motion for mistrial.

4. In his final enumeration the defendant contends that he was denied his right to effective assistance of counsel at trial.

The record reveals that defendant's counsel made several pretrial motions which demonstrated his diligent and thorough effort to protect his client. Immediately prior to trial, defendant's counsel took further steps to protect his client's interests by moving to dismiss the indictment, timely filing requests to charge, invoking the rule of sequestration and requesting that any witness excepted from the rule of sequestration be required to testify first. During trial, defendant's counsel made several relevant objections and twice moved for a mistrial. Further, defendant's counsel was successful in persuading the jury that the defendant was "not guilty" of the crime charged in Count 1 of the indictment. In light of these actions and other steps taken by defendant's counsel not enumerated in this opinion, we cannot say that the defendant was denied his right to effective assistance of counsel. On the contrary, we find that defendant's counsel adequately represented his client prior to trial and during trial. "Simply because other lawyers might have exercised different judgments and conducted [the defendant's] defense in a different manner does not require a finding that defense counsel's representation of [defendant] was so inadequate as to amount to a denial of effective assistance of counsel. *Estes v. Perkins,* 225 Ga. 268, 269 (167 SE2d 588) (1969)." *Austin v. Carter,* 248 Ga. 775, 779 (2, c) (285 SE2d 542). See *Heard v. State,* 177 Ga. App. 802, 804 (5) (341 SE2d 459).

*Judgment affirmed. Carley and Pope, JJ., concur.*

DECIDED SEPTEMBER 9, 1986.

*Robert G. Fierer,* for appellant.
*Spencer Lawton, Jr., District Attorney, David T. Lock, Gregory*

*M. McConnell, Assistant District Attorneys*, for appellee.