A93A1477. INGRAM v. THE STATE.
(438 SE2d 708)

SMITH, Judge.

Tommy H. Ingram was charged with incest, aggravated sodomy, and sodomy as a lesser included offense. OCGA §§ 16-6-22 (a) (1); 16-6-2 (a). The victim in all three counts was his natural daughter, who was over the age of 14 during the time period referenced in the indictment. Ingram was convicted of incest and aggravated sodomy after a jury trial. He appeals following the denial of his motion for new trial.

1. Ingram argues that the court wrongly amended the indictment against him. The indictment as returned by the grand jury, filed March 27, 1992, charged Ingram with committing each of the offenses alleged "between January 1st, 1986 and January 30th, 1989." This presented no issue as to the aggravated sodomy count, since the statute of limitation for aggravated sodomy is seven years. OCGA §§ 17-3-1 (b); 16-6-2 (b). However, the statute of limitation for the sodomy and incest counts against Ingram was four years prior to the return of the indictment. Id.; OCGA § 16-6-22 (b).

The record, which Ingram fails to reference in arguing this enumeration, reflects that no change was made in the indictment at any time. Rather than enumerating the failure to dismiss the indictment,

Ingram instead asserts that the trial court erroneously amended it on the day of trial. "It is well established in this and other jurisdictions that an indictment can not be materially amended by striking from or adding to its allegations, except by the grand jury, and only before it is returned into court. It is bad practice for the court to do either; and if such additions or subtractions materially affect the indictment, it becomes void and can not be the basis of a conviction. [Cits.]" *Gentry v. State*, 63 Ga. App. 275, 276 (11 SE2d 39) (1940). "The sustaining of a special demurrer, the result of which is either to strike from or add to the material allegations of an indictment, is equivalent to sustaining a general demurrer and quashing the indictment." Id.

Instead of dismissing the indictment, the court granted Ingram's subsequent motion in limine to restrict the evidence presented to acts alleged to have occurred within the four-year limitation period. Because of this, Ingram argues, the court in effect materially changed the indictment. Ingram concludes that since the alteration "materially affect[ed]" the indictment, it was tantamount to dismissing it in its entirety. *Gentry*, supra.

Even if we accept Ingram's strained premise, we disagree with his conclusion. Assuming that the dates appearing in each count of the indictment were effectively changed to reflect the time period that the jury could lawfully consider as to each count, such a change would do no more than remove from the indictment any suggestion that an act of incest or sodomy (other than aggravated sodomy) occurred outside the relevant limitation periods. " 'One or more [acts of sodomy or incest] being proven to the jury beyond a reasonable doubt satisfies the state's burden[,]' " and "additional acts [suggested] in the indictment could be considered mere surplusage." *Young v. State*, 205 Ga. App. 357, 363 (5) (422 SE2d 244) (1992). It would not have been error to remove from the indictment any suggestion of acts of simple sodomy or incest occurring more than four years prior to the date of indictment. *Gentry*, supra. Moreover, Ingram's mere conclusion in his brief that the court "should have dismissed the indictment" presents nothing for review. This enumeration is without merit.[1]

2. Ingram argues that the evidence was insufficient to convict him of aggravated sodomy because the State failed to satisfy the element of force. "A person commits the offense of aggravated sodomy when he commits sodomy with force and against the will of the other person." OCGA § 16-6-2 (a). " 'Lack of resistance, induced by fear, is not

---

[1] Ingram has not enumerated, and we therefore do not address, the denial of his motion to dismiss the indictment. In the interest of clarity, however, we note that Ingram expressly waived formal arraignment and pleaded not guilty weeks before his motion to dismiss was filed — a fact brought to the attention of this court solely by the record itself. In this regard, see, e.g., *McArthur v. State*, 169 Ga. App. 263 (1) (312 SE2d 358) (1983).

legally cognizable consent but is force. (Cit.)' [Cit.]" *Parker v. State*, 162 Ga. App. 271 (1) (290 SE2d 518) (1982). "[A] victim's lack of resistance induced by fear authorizes a finding of force. [Cit.]" *Callahan v. State*, 203 Ga. App. 898, 899 (3) (418 SE2d 157) (1992).

According to his daughter's testimony, Ingram came into her bedroom, closed the door, and locked it. He told her he wanted a "five minute favor," and pulled her nightgown over her head and eyes. Her underwear was pulled down, and although she could not see him, she felt his tongue touch her vagina before he proceeded to have intercourse with her. She further testified that he did not ask for her consent and that she consented "because I was afraid of what he would do to me if I didn't. I guess I thought I was supposed to [because], well, he was my father . . . and you're supposed to respect your father, and he always told me as long as I lived under his house [sic] I would do what he said, and I know he had a bad temper." The evidence is sufficient to authorize a rational trier of fact to conclude that Ingram's daughter did not resist his act of sodomy upon her due to a reasonable fear based on past experience and the intimidating nature of the sequence of events described. *Hines v. State*, 173 Ga. App. 657, 658-659 (2) (327 SE2d 786) (1985), relied upon by Ingram, is not a binding precedent on this court, and is otherwise distinguishable on its facts. See *Daniel v. State*, 194 Ga. App. 495, 498 (391 SE2d 128) (1990).

3. Ingram, who has since retained new counsel, contends that he received ineffective assistance of counsel at trial. Ingram's trial counsel testified at the hearing on Ingram's amended motion for new trial and was cross-examined by Ingram's current counsel. The court took into account the parties' written briefs and oral argument, as well as its own observation of Ingram's counsel at trial, and found that Ingram failed to show ineffectiveness based upon the standard enunciated in *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984). We find the evidence sufficient to support that conclusion. See *Scott v. State*, 263 Ga. 300 (432 SE2d 107) (1993).

4. Ingram asserts that during breaks in the trial, some members of the jury went outside the courthouse to smoke and that during those breaks, jurors met, spoke to, and otherwise communicated with the State's witnesses. After hearing testimony in support of this contention from Ingram's brother, his brother's girl friend, and his former brother-in-law, the court concluded that even assuming the alleged misconduct took place, Ingram had notice of it. The court reasoned that Ingram heard the instructions given to jurors that he now alleges were violated and that his failure to bring the allegations to the court's immediate attention constituted waiver. The court's assertion that Ingram himself had notice of the alleged misconduct during the trial went undisputed and remains so on appeal. "A party can

not during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later." *Joyner v. State*, 208 Ga. 435, 438 (2) (67 SE2d 221) (1951). This enumeration presents nothing for review.

5. Ingram claims error in the refusal to admit evidence of a prior false accusation of rape by his daughter against an uncle by marriage. "[B]efore such evidence can be admitted, the trial court must make a 'threshold determination (outside the presence of the jury) that a reasonable probability of falsity exists. . . .' [Cit.]" *Smith v. State*, 259 Ga. 135, 137-138 (1) (377 SE2d 158) (1989). The court heard uncontroverted evidence to the effect that at around the time of the alleged incident, the uncle had been drinking, that he has a "very low tolerance for alcohol," and that as a result, he got "snuckered." The uncle's wife, the victim's aunt, conceded that at one point on the occasion in question, he was stumbling around the house and did not recognize her, although she also testified that she was in the home that evening as well and was apart from her husband no more than five minutes. The trial court concluded that because of the uncle's confused state of drunkenness on the occasion in question, and his lack of awareness of what was going on, no reasonable probability of falsity existed under the test outlined in *Smith*, supra. This conclusion was supported by the evidence, and therefore the ruling was not an abuse of discretion.

6. In his final enumeration, Ingram asserts that error was committed when certain sexually oriented literature and objects were introduced into evidence over his objection.

Ingram's daughter testified that after Ingram and her stepmother had separated in contemplation of divorce, she was helping her stepmother pack up his possessions from the bedroom he and her stepmother once shared when she found a gray plastic bag. The bedroom had two closets, one used by Ingram, and the other by his former wife. The daughter testified that she found the bag in the closet used by Ingram; that she peeked inside the bag and then called "Elizabeth," her former stepmother; and that in the bag they found a dildo and "erection lotion." Ingram's former wife related the same story, and also testified regarding certain sexually oriented items found in a magazine rack in a bathroom primarily used by Ingram. Ingram objected to admission based on relevancy, chain of custody, materiality, and failure to place the items within the knowledge of the defendant.

" 'When facts are such that the jury, if permitted to hear them, may or may not make an inference pertinent to the issue, according to the view which they may take of them in connection with the other facts in evidence, they are such that the jury ought to be permitted to hear them. (Cits.) . . . Any evidence is relevant which logically tends to prove or to disprove a material fact which is at issue on the case,

and every act or circumstance serving to elucidate or to throw light upon a material issue or issues is relevant. (Cit.)' [Cit.]" *Rivais v. State*, 192 Ga. App. 226, 227 (2) (384 SE2d 200) (1989). Where a defendant charged with sex crimes seeks to exclude from evidence material offered for its sexually explicit nature, the question "is whether the evidence sought to be excluded by the defendant is admissible to show defendant's bent of mind toward the sexual activity with which he was charged or defendant's lustful disposition. [Cits.]" (Emphasis omitted.) *Helton v. State*, 206 Ga. App. 215, 216-217 (424 SE2d 806) (1992). "However, as to items of evidence which are distinct and recognizable physical objects, such that they can be identified by the sense of observation, the rule is that such items are admissible in evidence without the necessity for showing a chain of custody. [Cits.]" *Harper v. State*, 251 Ga. 183, 185 (1) (304 SE2d 693) (1983).

The exhibits in question, given their variety and sheer quantity, were relevant to show Ingram's lustful disposition, a material issue in this case. The jury could reasonably conclude, based on the testimony of his daughter and former wife, that the items alleged to have been found in his bedroom closet and magazine rack in fact belonged to Ingram. We find no error.

*Judgment affirmed. Beasley, P. J., and Cooper, J., concur.*

DECIDED DECEMBER 3, 1993 — 

*George Thomas*, for appellant.

*T. Joseph Campbell, District Attorney, D. Scott Smith, Brett W. Ladd, Assistant District Attorneys*, for appellee.