## A97A0387. PERKINS v. THE STATE.

### (487 SE2d 365)

BEASLEY, Judge.

Perkins appeals his conviction for armed robbery and the denial of his motion for new trial.

Johnson received a cash settlement of $500 for a car accident. He and his wife drove from picking it up to meet a friend named Drea who was interested in buying his car. Johnson wanted to buy another car. They first stopped to visit with a friend who lived down the street from Drea, and while there, Smith and Howard walked up to them and initiated conversation.

Smith, who lived with Drea, and Johnson had a ten-year friendship, and Johnson had told him several days earlier of his $500 settlement. Johnson had met Howard but otherwise barely knew him. Howard told Johnson he knew someone with a car similar to Johnson's and suggested they go to Smith's house to call about that car. They did so, and upon arrival, Howard went to a back room on the pretext of using the telephone. Johnson remained in the kitchen talking to Teresa Edwards, her mother and her niece.

There was a knock at the back door. It was Howard's brother, Perkins, whom Johnson did not know. He told them he wanted to see Howard. Perkins and Howard stepped outside. When Johnson followed, closing the door behind him, the pair turned and pointed guns in his face. Perkins said, "Give it up. I know you got it." They took Johnson's beeper and the $500 cash from his wallet and told him to run and jump the fence in the back yard. Johnson complied, and when he looked back, he saw Perkins and Howard running down the driveway. He jumped back over the fence and hurried to tell his wife, who was in the car, what had transpired. He also told Smith and Teresa Edwards, then went back up the street to his friends' house, told them what happened, and borrowed money for gas. After buying gas, he drove to the police station and reported the incident to Officer Mason. He gave Mason the perpetrators' nicknames as the only names he knew and described them and the getaway car.

Investigator Seagraves was assigned the case the following day. By then, Johnson had been able to determine the robbers' real names

and the address where they lived and related this to Seagraves. Perkins was arrested the next day.

1. Perkins first assigns error to the court in allowing the State to introduce hearsay statements made by Johnson on two occasions.

(a) The prosecutor called Teresa Edwards as a witness and asked if she spoke to Perkins, Howard or Johnson shortly after they went out the back door of her house, which prompted Perkins to object on hearsay grounds. See OCGA § 24-3-1. The prosecutor responded, "Your Honor, it is a statement made . . . immediately after the incident occurred." The court overruled the objection, and Edwards was permitted to testify that seven to eight minutes after Johnson went out the back door of her house with Howard and Perkins where he was robbed, Johnson came to her front door "hysterical" and "short of breath" and related to Edwards what had transpired.

Perkins argues that the admission of this testimony allowed the State to bolster Johnson's testimony by introducing evidence that he had made a similar statement shortly after the alleged incident. Perkins also complains that the court failed to articulate a basis for overruling his objection, but the court's ruling indicates it accepted the State's rationale that the statement was made "immediately after the incident occurred" and accordingly falls within the res gestae exception to the general hearsay rule in OCGA § 24-3-3.

" 'The admissibility of declarations as part of the *res gestae* is left to the sound discretion of the trial court, considering the time, circumstances, and statements in question. (Cit.) It is a determination in which very often no precise time when the *res gestae* ends may be fixed. (Cits.)' [Cit.]" *Shortes v. State*, 193 Ga. App. 859 (1) (389 SE2d 354) (1989). The evidence should be admitted if it is relevant and made without premeditation. *Robinson v. State*, 197 Ga. App. 600, 601 (2) (399 SE2d 94) (1990). Applying these principles, we find no abuse of discretion in the court's decision to admit Edwards' testimony.

(b) The court permitted Officer Seagraves to relate information Johnson gave the police over Perkins' objection that the testimony was hearsay and an attempt to bolster Johnson's testimony. The court stated it was allowing the testimony for the officer to explain his conduct and to demonstrate whether Johnson gave consistent statements to the police.

OCGA § 24-3-2 provides that "[w]hen, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence not as hearsay but as original evidence." The conduct and motives of the police in this case were not relevant to the issues on trial. *Momon v. State*, 249 Ga. 865 (294 SE2d 482) (1982). The testimony was accordingly inadmissible as original evidence to

explain Seagraves' conduct in investigating the robbery and, subsequently, in arresting the suspects. *Teague v. State*, 252 Ga. 534 (1) (314 SE2d 910) (1984); *Renner v. State*, 260 Ga. 515, 517 (2) (397 SE2d 683) (1990). But Johnson was present at trial and could be cross-examined, so the out-of-court statement from Johnson to Seagraves was admissible as a hearsay exception. *Price v. State*, 220 Ga. App. 176, 177 (2) (a) (469 SE2d 333) (1996).

Seagraves' testimony is also admissible as a prior consistent statement: " 'Inquiry as to impermissible bolstering no longer is necessary following *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985).' [Cits.] Moreover, '*Cuzzort* stands for the proposition that where the veracity of a witness is at issue, and that witness is present at trial, under oath, and subject to cross-examination, the prior consistent out-of-court statement of the witness is admissible.' [Cit.] Here, the victim was cross-examined by [Perkins] on matters related to [his] credibility. . . . Because the victim's credibility was under attack, the court properly allowed the State to show that [he] had made prior consistent statements to investigators." *Satterwhite v. State*, 212 Ga. App. 543, 544 (2) (442 SE2d 5) (1994).

2. Perkins next contends the court committed error in permitting the State to lead Smith, its own witness, to alter testimony the witness had already given.

Smith testified he was standing in the driveway and saw Perkins drive up and quickly walk around to the rear of the house. He said that from a reflection in glass on a toolshed in the back yard, Smith saw Perkins hold a pistol to Johnson's face. The prosecutor asked Smith how long it was between the time Perkins ran into the back yard and the time he saw the reflection in the tool shed. Smith responded that it was a couple of seconds. The prosecution then asked, "Now, could it have been a couple of minutes?" Perkins objected that the prosecutor was leading the witness, which the court overruled. Perkins contends that Smith's testimony that Perkins had been in the rear of the house for only "a couple of seconds" before Smith saw the reflection contradicted Johnson's testimony and would not have allowed enough time for Perkins to have accomplished all that Johnson maintained he had done.

The question was leading because "it [was] so framed as to suggest to the witness the answer which is desired." *James v. State*, 215 Ga. 213, 214 (3) (109 SE2d 735) (1959). In rephrasing the question, the prosecutor clearly intended for Smith to change his answer. "Leading questions are generally allowed only in cross-examination," OCGA § 24-9-63, but the court has discretion to allow leading questions on direct examination. Id. "It would be a rare case in which the trial court's exercise of discretion on this issue would warrant reversal." (Citations and punctuation omitted.) *Wright v. State*, 220 Ga.

App. 233, 235 (4) (469 SE2d 381) (1996). In reviewing the testimony as a whole, the court did not abuse its discretion in permitting the leading question on direct.

3. Perkins' final enumeration is that he was denied effective assistance of counsel by the court's denial of his motion for new trial before counsel had an opportunity to obtain a trial transcript.

The jury found Perkins guilty on June 5, 1996, and he was sentenced the next day. He was represented at trial by an attorney with the DeKalb Public Defender's Office. Another attorney in that office, who had played no part in Perkins' trial, was assigned to represent him on appeal. She moved for new trial on the general grounds on July 3, and the court set the hearing for August 9. The court reporter did not complete the trial transcript until September 30. The first appellate counsel waived argument on the motion.

A third attorney from the same office now represents Perkins and asserts he did not receive effective assistance of counsel on the motion for new trial, in violation of the Sixth Amendment to the United States Constitution. She argues the court abused its discretion under OCGA § 5-5-40 by hearing and determining the motion for new trial before the transcript was finalized and counsel could review it, since the errors now raised would have and should have been raised in that motion. Prejudice is alleged.

Claims for ineffective assistance of counsel raised for the first time on appeal are generally remanded to the trial court for an evidentiary hearing. *Tweedell v. State*, 218 Ga. App. 518, 520 (2) (462 SE2d 181) (1995). In this instance remand is unnecessary, as was the case in *Marcello v. State*, 220 Ga. App. 284, 285 (2) (469 SE2d 252) (1996), and cases cited therein.

First, the claim could not be raised by current counsel because of the ethical prohibition against a lawyer acting as a witness regarding a trial in which he participated. For purposes of ineffective assistance claims, public defenders in the same office are treated as members of a law firm. *Ryan v. Thomas*, 261 Ga. 661 (409 SE2d 507) (1991). Accordingly, asserting a claim against a public defender in the same office is tantamount to doing so against oneself. Id. Perkins' trial counsel is in effect also his appellate counsel.

Second, even if we were to remand for other counsel to be appointed to pursue the claim, the ultimate result would be the same. The only assertion of ineffective assistance is the second attorney's waiver of the hearing on the motion for new trial without having first received the transcript. No suggestion is made that had she done do, some identified reversible error would have been argued to the trial court so as to require a new trial. Although it is asserted that, had the transcript been available, counsel would have raised the grounds now presented, we have ruled on and rejected those

grounds in this opinion. To establish ineffective assistance, one must show " '[t]here is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (Punctuation omitted.) *Marcello*, supra. Even assuming the presence of the other ingredient, this one is absent.

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED MAY 8, 1997 —
RECONSIDERATION DENIED JUNE 2, 1997.

Before Judge Castellani.

*Kendal D. Silas*, for appellant.

*J. Tom Morgan, District Attorney, Desiree S. Peagler, Assistant District Attorney*, for appellee.