### A97A2467. JOHNSON v. THE STATE.
(499 SE2d 145)

SMITH, Judge.

Steven Quinton Johnson was indicted by a Cherokee County grand jury on one count of aggravated child molestation, OCGA § 16-6-4 (c), and one count of child molestation, OCGA § 16-6-4 (a). He was convicted by a jury, his motion for new trial was denied, and he appeals. At Johnson's trial, the State introduced a "final protective order" obtained by Johnson's then wife[1] after his arrest and confinement in jail on these charges. The admission of this document, which was read in its entirety to the jury, was harmful error under the circumstances of this case, and we must reverse.

1. Johnson's contention that the evidence is insufficient to sustain his conviction is without merit. The victim's testimony alone was sufficient to sustain the convictions. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Hardy v. State*, 210 Ga. App. 811, 813 (4) (437 SE2d 790) (1993).

2. At trial, Johnson questioned his wife regarding the divorce petitions she filed against her two previous husbands. According to Johnson, her divorce actions demonstrated a pattern of making false allegations of cruel treatment and child abuse in order to obtain marital assets. In response to this line of questioning, the State offered a document styled "Final Protective Order" obtained by Johnson's wife pursuant to OCGA § 19-13-1 et seq. The State argued to the trial court on Johnson's objection, and to the jury in closing argument, that the document constituted an "admission" or "agreement" by Johnson that he had committed "acts of family violence" against his wife and the victim and thus, by implication, the acts charged in the indictment.[2] The trial court noted that it was a "close call," but admitted the order and allowed the State to read it to the jury in its entirety.

---

[1] Johnson's wife's petition for divorce was pending at the time of trial.

[2] The State also argued that Johnson had "opened the door" to questions regarding the divorce proceedings between him and his wife. Even assuming that Johnson "opened the door" to questions regarding the divorce proceedings, the "final protective order" was not part of the divorce proceedings. It was a petition brought by his wife pursuant to OCGA § 19-13-1 et seq. before the divorce action had been filed; it was a separate proceeding and assigned a separate civil action number. More importantly, this argument does not address the underlying relevance or admissibility of the order.

The State tacitly acknowledges that this order was prejudicial to Johnson and placed his character in evidence; the State argues on appeal that the order was relevant and material and the fact that it incidentally placed Johnson's character in evidence did not render it inadmissible. We disagree.

It is well established under Georgia law that " '[t]he judgment in a civil action is not admissible in a criminal action to prove any fact determined in the civil action.' [Cits.]" *Flynt v. State*, 153 Ga. App. 232, 243 (1) (264 SE2d 669) (1980) (statistics cited in federal court order not admissible in state criminal proceeding). No dispute exists that the petition brought by Johnson's wife under the Family Violence Act was a civil action; OCGA § 19-13-3 (c) explicitly provides for a preponderance of the evidence standard "as in other civil cases," and the petition was assigned a civil action number.

While the State characterizes the court order as an "admission" by Johnson, "[a]dmissions by agents or attorneys are not admissible in criminal cases in the sense in which they are admissible in civil cases. They should not be treated as evidence against the accused unless shown to have been authorized by him." (Citations and punctuation omitted.) *Dryer v. State*, 205 Ga. App. 671, 672, n. 1 (423 SE2d 297) (1992). This is not a case in which a defendant's recorded testimony in a civil matter, sworn to and certified by a court reporter, was introduced into his criminal prosecution as an admission. See, e.g., *Lam v. State*, 208 Ga. App. 324, 325 (2) (430 SE2d 775) (1993) (State introduced into criminal trial transcripts of defendant's testimony in bankruptcy and civil court proceedings). Nor is this a case in which a defendant was represented by counsel and acquiesced in a stipulation made in open court in the criminal matter itself, as in *Dryer*, supra at 673.

In contrast, Johnson was brought from the jail in shackles to respond to his wife's petition. Unlike his wife, he was unrepresented by counsel. The record reveals no transcript of the proceedings or Johnson's testimony; according to Johnson's counsel below, Johnson made no admissions and was never afforded an opportunity to review the court's order. His wife's counsel, who also represented her in the divorce, drafted the order. "The common practice of directing counsel for the prevailing party to prepare the judgment for the trial court's signature, although not reversible error, has been greatly disfavored by this court, as well as by the United States Supreme Court. [Cits.] . . . The reasons for this disfavor have been particularly well illustrated in the case at bar." *PDA, Inc. v. Haas Corp.*, 185 Ga. App. 785, 786 (366 SE2d 169) (1988). Taking all these circumstances into consideration, the trial court erred in admitting the "final protective order" and allowing it to be read in its entirety to the jury.

Nor can we say that admission of this evidence was harmless in the context of this case. The victim's testimony was not corroborated by any medical or psychological evidence. The only corroboration of the victim's testimony was provided by her mother, Johnson's opponent in an obviously bitter divorce. Evidence also was presented that the 14-year-old victim did not raise the allegations until she encountered disciplinary problems at school and was faced with suspension for misconduct, including falsifying school records. In essence, this case pitted Johnson's credibility against that of the victim, and we cannot rule out the possibility that the "final protective order," by improperly giving judicial imprimatur to the victim's accusations, affected the jury's verdict.

3. We address those remaining enumerations of error likely to recur at trial. In one enumeration of error, Johnson contends the trial court erred in denying his motion to suppress a number of adult magazines and an adult videotape. These items were provided to the State by his wife after she met with a police detective and assistant district attorney. According to her testimony at trial, they asked her if there were any "dirty magazines" in the house, and she responded that there were not. The detective told her it would be "helpful" if the State had books or magazines to corroborate her daughter's allegations. The assistant district attorney asked her to search the house and call him if she found anything. She testified that she then located the items which form the basis of Johnson's motion to suppress.

It is well established that no illegal search and seizure occurs when a private citizen independently discovers contraband or other evidence of illegal conduct and then brings it to the attention of law enforcement. *Hester v. State,* 187 Ga. App. 46, 47 (1) (369 SE2d 278) (1988) (mechanic discovered drugs hidden in car and informed police); see also *Williams v. State,* 257 Ga. 788, 789 (3) (364 SE2d 569) (1988) (hospital removed bullet from defendant and gave to police; officers testifed they never asked or told hospital to remove bullet).

It is also well established that the State cannot avoid a Fourth Amendment challenge to a search and seizure by asking a private citizen to act on its behalf and seek out evidence. Such a search would be "conducted in concert with law enforcement authorities, thus triggering the safeguards of the Fourth Amendment. [Cits.]" *Pervis v. State,* 181 Ga. App. 613, 614 (1) (353 SE2d 200) (1987). "The test is whether the private individual, in light of all the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the government when he produced the evidence." (Citations and punctuation omitted.) *Marks v. State,* 174 Ga. App. 711, 714 (330 SE2d 900) (1985).

Although it is apparent that the State became involved in the search and seizure of the items at issue here by requesting or directing the participation of a private citizen, we nevertheless find no error because Johnson's wife also lived in the marital residence and had common authority over it and its contents. *Johnson v. State*, 266 Ga. 140, 141 (464 SE2d 806) (1996). She had the right to grant the State permission to search her own residence, and she had the right to lead officers of the State to items located there. Id. It follows that she could search her own residence for items requested by officers of the State.

We recognize the risk pointed out by Johnson, that an interested party might fabricate rather than discover items already suggested by the State as favorable to the prosecution. But, as noted in Division 4 below, this goes to the weight of the evidence, not its admissibility. The trial court did not err in denying Johnson's motion to suppress.

4. In another enumeration of error, Johnson contends that the magazines and videotape should not have been admitted as evidence at trial. He argues that the State did not sufficiently establish the origin or ownership of the items, and that the items produced at trial did not conform to the detailed descriptions given by the victim of magazines and tapes Johnson allegedly showed her. Johnson's first argument is without merit because no chain of custody requirement exists for a distinct physical object such as a videotape. *Gadson v. State*, 263 Ga. 626, 627 (2) (437 SE2d 313) (1993); see also *Ingram v. State*, 211 Ga. App. 252, 256 (438 SE2d 708) (1993). Second, the inconsistencies in the identification of the magazines and videotape go to weight rather than admissibility. Johnson brought out these points on cross-examination, including testimony that the items produced by Johnson's wife did not match the description of the items identified by the victim, and that some of the items belonged to Johnson's wife rather than to Johnson. Regardless of whether these materials corroborated the victim's testimony, they were admissible to show Johnson's "state of mind and lustful disposition." *King v. State*, 209 Ga. App. 529, 530-531 (2) (433 SE2d 722) (1993).

*Judgment reversed. McMurray, P. J., Birdsong, P. J., Ruffin and Eldridge, JJ., concur. Andrews, C. J., and Beasley, J., dissent.*

BEASLEY, Judge, dissenting.

I concur in Divisions 1, 3 and 4 of the majority opinion but respectfully dissent with respect to Division 2 and the reversal of the trial court's judgment. The conviction should be affirmed because the admission into evidence of the protective order did not constitute reversible error in this case.

When the State introduced the order during redirect examination of the child-victim's mother, defendant objected on two grounds.

The first was that it was an ex parte order obtained against defendant, when unrepresented by counsel, soon after he was arrested on the charges now being tried and just prior to instituting a separate action for divorce and thus was not relevant.

The second basis for the objection was that the document impermissibly injected defendant's character into evidence, which is prohibited by OCGA § 24-9-20 (b). Defendant conceded that if it was a divorce order, "it might be relevant."

The two grounds stated at trial are the only two grounds upon which this Court can rule on appeal, for the trial court had no opportunity to consider any other bases for excluding the evidence and therefore cannot be held to have erred. *Chesser v. State*, 228 Ga. App. 164, 165 (1) (491 SE2d 213) (1997) ("At trial, appellant failed to object to the admissibility of the map on the same grounds as asserted in his enumeration of error and brief; accordingly, he has waived on appeal all issues of admissibility to which he failed to pose a timely objection at trial"); *McGee v. State*, 205 Ga. App. 722, 729 (12) (423 SE2d 666) (1992) ("At trial appellant timely objected to the admission of the tape only on the grounds [of the victim's age]. Accordingly, all other objections, including but not limited to improper bolstering, lack of adequate foundation, and double hearsay . . . were waived"); *Fletcher v. State*, 199 Ga. App. 756, 757 (406 SE2d 245) (1991) (same).

1. The evidence was relevant. Defendant's theory of the case was that the mother had fabricated the charges and orchestrated the child's accusations and trial testimony in order to divorce defendant and obtain custody of the children and defendant's property, the marital property, and support. In order to prove this, defendant introduced during cross-examination of the mother her complaint in a prior divorce, filed in 1988, in which she alleged that her then-husband had inflicted physical abuse on her and continued to harass and threaten her and their child.

He cross-examined her about this allegation and about the things she was asking for (custody, support, attorney fees, equitable division of property), in an effort to show that she had a pattern of making false accusations against husbands in order to obtain divorces and gain custody, property, and support. He also cross-examined her about this prior history in an effort to show that it was this, and not defendant's alleged acts, which was the cause of the child's "dysfunction" in accusing defendant of the acts for which he was on trial and in having difficulties at school.

In his closing argument to the jury, defendant elaborated on his theory of fabrication, attacking the mother's credibility (and thus the child's) by urging that she had an ulterior self-interested motive or "agenda" in testifying against defendant and in influencing the child. This agenda, defendant asserted, was to acquire all the benefits she

sought in a divorce from defendant as shown by her marital history.

The State rebutted the argument that the charges were the mother's contrived scheme by arguing, based on the mother's testimony, that the prior divorce situations were not falsely alleged with respect to abuse and were not unwarranted efforts to gain undeserved benefits. The State further reasoned that the offenses charged in this case had actually occurred and the mother's testimony and that of her daughter were truthful, as shown by the fact that shortly after the mother learned of defendant's activities and he was charged, a superior court judge granted a domestic violence protective order. In countering the objection to this evidence at trial, the State similarly explained this relevance.

In ruling on the objection, the court understood the relevance of the document. It stated: "And you're [defendant] trying to show a pattern of conduct on her part [to which defendant agreed] and . . . [t]his would contradict that. . . . Your contention is that she falsely made these accusations [to which defendant agreed] . . . like she's done in two other divorce cases. And now, he's trying to show that a court has looked into it, found that there was some justification for it, and that [defendant] agreed to it." The court correctly analyzed the issue of admissibility.

Final orders and judicial approvals of consent agreements as the one at issue here are undertaken "to bring about cessation of acts of family violence" pursuant to verified petition and hearing of which respondent is notified. OCGA § 19-13-4 (a) and (c). Defendant was present for the hearing which resulted in the order. It is presumed the court in the domestic violence action conducted its proceedings and entered the order properly, upon exercise of the discretion given to it by that law. *Vaughan v. Buice*, 253 Ga. 540 (322 SE2d 282) (1984) ("there is a presumption in favor of the regularity of all proceedings in a court of competent jurisdiction"); *Cox v. City of Lawrenceville*, 168 Ga. App. 119, 120 (1) (308 SE2d 224) (1983) ("Absent a showing to the contrary, the proceedings in the trial court are presumed to have been conducted in a regular and legal manner").

2. Defendant's second ground of objection was that the document placed his character in issue when he had not done so. He cannot avoid the consequences, however, of his opening the door for such evidence by seeking to prove falsity in unrelated court proceedings. By seeking to impeach the mother as he did, he created a necessity for the State to demonstrate to the jury that her credibility was not thereby impugned. The State was permitted to do so. *Perkins v. State*, 226 Ga. App. 613, 615 (1) (487 SE2d 365) (1997) ("Inquiry as to impermissible bolstering no longer is necessary. . . . Because the victim's credibility was under attack, the court properly allowed the State to show that he had made prior consistent statements to inves-

tigators"); *McGee*, supra, 205 Ga. App. at 727 (same); compare *Blige v. State*, 264 Ga. 166, 167 (2) (441 SE2d 752) (1994) ("evidence which goes to a witness' credibility is not relevant *unless* produced to attack the credibility of a witness, or to rehabilitate credibility when it has been attacked") (Emphasis supplied.).

Because the substance of the protective order was based on her verified petition, it was admissible as evidence of a prior consistent statement. *Postell v. State*, 200 Ga. App. 208, 210 (3) (407 SE2d 412) (1991) (where witness veracity at issue, prior consistent statement admissible).

If the document incidentally put his character in issue because it gave credence to the very charges for which he was being tried, it did not thereby become inadmissible. *Farley v. State*, 265 Ga. 622, 625 (2) (458 SE2d 643) (1995) ("evidence which 'is otherwise relevant . . . does not become inadmissible simply because it incidentally puts a defendant's character or reputation into evidence' "); *Mulkey v. State*, 250 Ga. 444, 446 (3) (298 SE2d 487) (1983) (this is especially true if the defendant opened the door); *Mason v. State*, 180 Ga. App. 235, 238 (3) (348 SE2d 754) (1986) (especially true if defendant opened the door).

I am authorized to state that Chief Judge Andrews joins in this dissent.

DECIDED MARCH 20, 1998 —
RECONSIDERATION DENIED APRIL 1, 1998 ▮

*Roderick H. Martin, Carol A. Lastorino*, for appellant.
*Garry T. Moss, District Attorney, Charles D. Gafnea, Assistant District Attorney*, for appellee.