A03A1880. FOX v. THE STATE.
(596 SE2d 773)

BARNES, Judge.

On December 14, 1993, Juan Marshall Fox was convicted by a Cobb County jury of rape and two counts of aggravated sodomy, and sentenced to three consecutive life sentences. He filed a timely motion for new trial, which was amended on March 23, 2000, and subsequently denied on April 20, 2000. Fox appeals and enumerates several errors, which upon review, we find meritless.

On appeal, we view the evidence in the light most favorable to support the verdict, and a defendant no longer enjoys the presumption of innocence. *Chung v. State*, 240 Ga. App. 394 (1) (523 SE2d 615) (1999). This court neither weighs the evidence nor determines witness credibility, and we are bound to uphold the verdict " 'if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Cits.]" Id. at 394-395.

Construed to support the verdict, the evidence shows that the victim worked for a mortgage company in a large office building in Cobb County. The victim testified that the building has a security guard, and that her company has two exterior doors that are locked between 5:30 and 6:00 p.m. Fox worked with the janitorial staff at the office building, and worked on the victim's floor. The victim testified that on the night before the incident, she commented to a co-worker about how frequently Fox came in and out of their office. She said that she and Fox chatted briefly.

On the night of August 20, 1992, the victim worked late, and again saw Fox several times during the evening. Fox was in the office

---

specific act, without resort to any inference or presumption).
[11] See *Smith*, supra.

as she was preparing to leave. He asked her to walk out through the rear door because he had vacuumed the front of the office. As she was walking out of the door, Fox ran up behind the victim and put a broom handle around her neck. The victim struggled, but Fox overpowered her, pushed her to the ground, straddled her and choked her until she lost consciousness. Fox flipped the victim on her stomach and inserted the broom handle into her anus; he then turned her over and inserted his penis into her vagina. Fox put the victim on her stomach again and sodomized her, raped her again, anally sodomized her again, and then forced her to perform fellatio on him. Fox repeatedly threatened to kill or hurt the victim. The victim testified that although Fox said that he had to kill her, she "whined and cried so much that he finally almost had a little sympathy for [her]." She told him that she would not tell anyone what had happened. The victim tried to escape, but Fox caught her and took her out of the office and into an elevator. When the elevator opened, a man was mopping nearby, and Fox released the victim.

1. Fox asserts the general grounds. But, taking the victim's testimony as true, as we must, that evidence alone was sufficient to sustain the convictions. *Johnson v. State*, 231 Ga. App. 823 (1) (499 SE2d 145) (1998). Any questions of inconsistency or credibility were for the jury to resolve. *Middleton v. State*, 194 Ga. App. 815, 816 (2) (392 SE2d 293) (1990).

2. Fox next complains that although the trial court ordered him to undergo a "psychiatric evaluation," he was instead evaluated by a state psychologist. This argument is without merit.

"The requirement that a defendant be given a psychiatric evaluation . . . may be satisfied by an evaluation by a doctor qualified to give such an opinion who may not be a board-certified psychiatrist." *Henderson v. State*, 157 Ga. App. 621, 623 (4) (278 SE2d 164) (1981). Accordingly, it was not error for Fox's psychiatric evaluation to have been conducted by the senior psychologist in the forensic services division of Central State Hospital.

3. Fox contends that the trial court erred in denying his request for funds to conduct an independent psychiatric evaluation. He argues that such denial prevented him from pursuing insanity as a defense and rendered his trial unfair.

The evidence shows that Fox was first evaluated for mental competency while he was in jail and he refused to cooperate with the doctor. Then, based on the psychiatrist's observation that Fox might be paranoid schizophrenic, the doctor recommended that "[Fox] should be hospitalized in a maximum secure hospital for further observation and evaluation." The trial court ordered a mental evaluation for competency from Central State Hospital.

A complete mental competency evaluation was conducted, and the psychologist determined that, while there was some indication of "a naturally paranoid disposition," Fox was mentally competent to stand trial. Fox then filed a motion for funds to obtain an independent evaluation, which the trial court denied.

The denial of a motion for a second psychiatric examination will not be overturned unless an abuse of discretion is shown. *Callaway v. State*, 208 Ga. App. 508, 510 (1) (431 SE2d 143) (1993). There was no abuse of discretion in the instant case.

As noted above, the state psychologist concluded that Fox was competent to stand trial and suffered no mental disorder. Fox presented no evidence to rebut this conclusion. Therefore, he failed to make the preliminary showing that his sanity would be a significant factor at trial. In fact, Fox maintained throughout that the victim was mistaken about who had attacked her. The trial court did not err in denying his motion to obtain independent psychiatric assistance. *Rattansay v. State*, 240 Ga. App. 165 (523 SE2d 36) (1999); see also *Brown v. State*, 260 Ga. 153, 158 (7) (391 SE2d 108) (1990) (denial of funds to obtain independent psychiatric evaluation affirmed where defendant failed to rebut court-ordered psychiatrist's conclusion that he was sane).

4. Fox maintains that it was error for the trial court to deny his motion for an independent psychiatric evaluation of the victim.

> We are aware of no statutory authority nor case law in this state that mandates the involuntary examination of a rape victim. . . . [I]t is within the trial court's discretion to grant or deny a request for psychiatric examination of a witness. . . . Under the circumstances of this case, we discern no abuse of discretion in the denial of a psychiatric examination of the victim.

*J. B. v. State of Ga.*, 171 Ga. App. 373, 376 (4) (319 SE2d 465) (1984).

5. Fox also claims as error the trial court's denial of his request for funds to employ a fiber expert. He does not, however, show that this motion was ever ruled on, and, in fact, our review of the record does not disclose a disposition of this issue. The record includes two orders relating to securing funds for Fox's defense. One motion was entitled "Motion for Funds to hire investigators and expert witnesses," and the other was "Defendant's Motion for funds to hire an investigator to aid in the preparation and presentation of his defense." Both were filed on November 16, 1992. On March 3, 1993, the trial court issued an order granting defendant's motion for funds "to hire an investigator to aid in the preparation and presentation of his defense."

Accordingly, "[a]ny purported error was waived by [Fox's] failure to obtain a ruling on these issues before the verdict," *Harper v. State*, 241 Ga. App. 865, 867 (2) (528 SE2d 317) (2000), and this enumeration presents nothing for review.

6. Fox asserts that the State's expert on hair and fiber analysis was not properly qualified.

The qualification of an expert witness is within the sound discretion of the trial judge. *Vasquez v. State*, 241 Ga. App. 512, 513 (2) (527 SE2d 235) (1999). A witness may be qualified as an expert based upon knowledge gained through study or experience and "[t]o qualify as an expert, generally all that is required is that a person be knowledgeable in a particular matter; his special knowledge may be derived from experience as well as study, and formal education in the subject is not a requisite for expert status." (Citation and punctuation omitted.) Id.

Here, the State's expert fiber analyst had worked at the Georgia Bureau of Investigation for two years as a microanalyst in the Forensic Sciences Division, and had a bachelor of science degree in Forensic Science. She also completed a nine-month training course in the hair and fiber fields, and "completed several oral and written tests." Her duties included analyzing, comparing, and evaluating physical evidence including hairs, fibers, and shoeprints. She had worked on approximately 50 cases while she was employed at the GBI. Previously, she had testified as an expert in hair analysis and physical evidence, but not as a fiber expert.

As noted above, knowledge in the area of expertise can be derived from study as well as experience. That being so, we cannot say that the trial court abused its discretion in qualifying this witness as an expert in fiber analysis.

7. Fox contends the trial court erred in denying his request for a change in venue based on pre-trial publicity.

> The trial court has the discretion to grant a change of venue and its discretion will not be disturbed absent an abuse of that discretion. In a motion for a change of venue, the petitioner must show (1) that the setting of the trial was inherently prejudicial or (2) that the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible.

(Citations and punctuation omitted.) *Eckman v. State*, 274 Ga. 63, 68 (4) (548 SE2d 310) (2001).

Fox has shown neither. The voir dire transcript reveals that only four of the venire members had heard anything about the case. Each of the four was questioned individually, and of those four, two were

excused for cause. As the remaining prospective jurors who had been exposed to pre-trial publicity about the case indicated they could render a decision based on the evidence, we find no error. *Dixson v. State*, 269 Ga. 898 (2) (506 SE2d 128) (1998).

8. Fox argues that the trial court erred by denying his motion to prohibit jury dispersal. He argues that since there was no change in venue, because of the publicity surrounding the case, the trial court should not have dispersed the jury. Under OCGA § 15-12-142 (a), "[a]t any time during the trial of a civil or criminal case, except in capital cases, either before or during jury deliberation, the judge may, in his discretion, allow the jury to be separated and the members thereof to be dispersed under appropriate instructions." See *Jones v. State*, 243 Ga. 820, 825 (3) (256 SE2d 907) (1979), cert. denied, 444 U. S. 957 (100 SC 437, 62 LE2d 329) (1979).

This case, however, is not a capital case for purposes of jury sequestration since the State did not seek the death penalty. *Peppers v. State*, 261 Ga. 338, 340-341 (404 SE2d 788) (1991). The trial court does not abuse its discretion in failing to sequester a jury in a noncapital case when, as here, the court instructs the jury not to discuss the case among themselves or with others during trial recesses. See *Bergeson v. State*, 272 Ga. 382, 383 (3) (530 SE2d 190) (2000).

9. Fox argues that the trial court also erred by denying his motion to sequester potential jurors during individual voir dire. He argues that because the case involved "a rape of a white woman by a black man," jurors may have felt uncomfortable expressing their biases and prejudices.

> OCGA § 15-12-133 gives defense counsel the right to examine jurors individually. The right does not encompass *isolated* examination. *Whitlock v. State*, 230 Ga. 700, 705-706 (198 SE2d 865) (1973). "The single purpose for voir dire is the ascertainment of the impartiality of jurors, their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination. The control of the pursuit of such determination is within the sound legal discretion of the trial court, and only in the event of manifest abuse will it be upset upon review." Id. at 706 (5). We have reviewed the jurors' general response to defense counsel's *proper* questions regarding [race] as it relates to the ability to be fair and impartial in the trial of this case. Based thereon, we find that appellants have not shown any prejudice resulting from the voir dire procedure utilized by the trial court.

*Baker v. State*, 230 Ga. App. 813, 815 (1) (b) (498 SE2d 290) (1998).

10. Finally, we note that in his brief Fox failed to cite to the record any of his alleged errors, as required by Court of Appeals Rule 27 (c) (3). Specifically, the appellant's brief is required to include

> the material facts relevant to the appeal and the citation of such parts of the record or transcript essential to a consideration of the errors complained of, and a statement of the method by which each enumeration of error was preserved for consideration. Record and transcript citations must be to the volume or part of the record or transcript and the page numbers that appear on the appellate records or transcript as sent from the court below.

Court of Appeals Rule 27 (a) (1).

Although, we have reviewed each of the delineated enumerations, as we have reiterated time and time again, this Court will not cull the record in search of error on behalf of a party. See *Cobb v. State*, 236 Ga. App. 265, 268 (3) (a) (511 SE2d 522) (1999).

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED MARCH 17, 2004.

*Victor A. Cuvo*, for appellant.

*Patrick H. Head, District Attorney, Amy H. McChesney, Russell J. Parker, Assistant District Attorneys*, for appellee.