## A04A2315. HOBBS v. THE STATE.
(611 SE2d 775)

BARNES, Judge.

Christopher Michael Hobbs appeals his convictions for violating the Georgia Controlled Substances Act by possessing amphetamine and gamma hydroxybutyric acid ("GHB"). He contends the trial court erred by denying his motion to suppress evidence seized during a warrantless search of his gym locker and by charging, over his objection, on simple possession of amphetamine and simple possession of GHB as lesser included offenses of possession of those drugs with the intent to distribute. He also contends the State failed to prove his guilt beyond a reasonable doubt. Finding no reversible error, we affirm.

1. When an appellate court reviews a trial court's decision on a motion to suppress, our responsibility is to ensure that there was a substantial basis for the decision. *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990). We are guided by three principles when interpreting the trial court's determination of the facts. When considering such a motion the trial court is the trier of facts. The court hears the evidence, and when its findings are based upon conflicting evidence, they are analogous to a jury verdict and must not be disturbed by an appellate court if any evidence supports them. Also, the trial court's decisions regarding questions of fact and credibility of witnesses must be accepted unless they are clearly erroneous, and the evidence must be construed most favorably toward upholding the trial court's findings and judgment. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). Additionally, when the evidence is uncontroverted and no question about a witness's credibility exists, "the trial court's application of the law to undisputed facts is subject to de novo appellate review." *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

The evidence presented at the hearing on Hobbs's motion to suppress showed that an employee of a health club was inspecting lockers in the men's locker room looking for a missing wallet when she found a locker containing food supplements like some that had been missing from the health club's inventory. Looking further, the employee noticed a water bottle containing a plastic bag of pills and a large plastic bottle marked "finger nail polish remover" containing a clear liquid. She closed the locker and finished looking for the wallet, and then decided to talk to her manager about what she had found.

The next morning they discussed the contents of the locker and entered the locker room to look in the locker. The manager was concerned about the pills and the contents of the finger nail polish remover bottle because of some reports about use of drugs or steroids

in the gym and instructions from the owner of the health club to be on the look out for such items.

The manager then called her husband, a State Highway Patrolman, for advice as her husband as well as a police officer. He told her that he would call the drug task force agents about coming to the health club.

When the agents arrived, the manager told them what she had found and asked for their advice on how to handle the problem. They told her to do whatever she would normally do under the circumstance. An officer told her that he could not tell her what to do, and could not tell her to cut the locks off the lockers. Then she did what she would normally do, which was cut the locks off the lockers and remove the contents. The officer did not tell her to cut the locks off the locker and hand over the things she found. The investigator also told her that if she brought the contents of the locker to him, he would tell her if it was an illegal substance, but that he could not tell her that until she brought the substances to him.

A task force investigator accompanied the manager in the locker room, and then the manager brought the items from the locker to the other investigators. While she was in the locker room she believes the drug task force investigators talked to the district attorney's office for advice. She also contacted the health club's owner and he told her to do what was in the best interest of the club, and if that meant cutting off the locks from all the lockers, she should do that. She did and brought the contents of the lockers to the investigators.

At the conclusion of the hearing, the trial court denied the motion to suppress and also denied Hobbs's renewed motion made at the close of the evidence. Hobbs contends this was error because the employees of the health club were acting as government agents, see *State v. Lovig*, 189 Ga. App. 436, 437 (376 SE2d 229) (1988), and the Fourth Amendment cannot be evaded by asking private citizens to do what the government agent cannot. *Gasaway v. State*, 137 Ga. App. 653, 656 (2) (224 SE2d 772) (1976).

Implicit in the trial court's denial of Hobbs's motion to suppress, however, are findings of fact that the employee and manager of the health club were acting in their private capacities and were not acting as agents of the government, and the conclusion of law that their actions as private citizens did not constitute an illegal search and seizure. As evidence supports these findings of fact, they were not clearly erroneous. The health club employees acting as private citizens discovered the substances in the lockers and brought them to the investigators to determine whether they were illegal drugs. The investigators did not direct their activities, and the investigators did not exceed the scope of the employees' search. As we find that the task force investigators did not conduct the search, no question concerning

whether the health club employees were authorized to consent to the search is presented. The trial court correctly applied the law to these facts.

The Fourth Amendment provides protection against unlawful searches and seizures by government officials and not against acts by private individuals who are not agents of the government. *Marks v. State*, 174 Ga. App. 711, 715 (1) (330 SE2d 900) (1985). No Fourth Amendment violation exists when an individual's privacy is initially invoked by a private act, *Hester v. State*, 187 Ga. App. 46, 47 (1) (369 SE2d 278) (1988), citing *United States v. Jacobsen*, 466 U. S. 109 (104 SC 1652, 80 LE2d 85) (1984), and any additional invasion of Hobbs's privacy by the drug task investigators is measured by the degree to which they may have exceeded the scope of the private search. Id. Discovery of the contraband by a private citizen and the verification of this evidence by the investigators, however, do not violate the Fourth Amendment. *State v. Johnston*, 171 Ga. App. 224, 225 (319 SE2d 83) (1984). Consequently, the trial court did not err by denying the motion to suppress.

2. Hobbs also contends the evidence was not sufficient to sustain his convictions. The principles applicable to appellate review of a criminal conviction are stated in *Taylor v. State*, 226 Ga. App. 254, 255 (485 SE2d 830) (1997). Viewed in the light most favorable to the verdict, the evidence shows that some months before the drugs were discovered Hobbs was assigned the locker in which the drugs were found, even though most lockers in the club were for daily use only.

The drug task force took possession of the items given to them by the health club employees, and ultimately sent the substances in the locker to the Georgia Bureau of Investigation crime lab to be tested. The substances contained amphetamine and GHB. The expert, who tested the drugs, testified that the amount of GHB could be for personal use over a long period of time. They also had the containers tested for fingerprints and of the several prints on the bottle, one of the prints matched one of Hobbs's fingers. The other prints on the bottle could not be identified.

The morning the drugs were taken from the locker, Hobbs came in the health club and asked who had been in his locker. At this point one of the officers placed him under arrest. Even though the locker in question had a lock, it could be opened without the key.

The test established in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), is the appropriate one to use when the sufficiency of the evidence is challenged. *Humphrey v. State*, 252 Ga. 525, 527 (1) (314 SE2d 436) (1984). When the jury is authorized to find the circumstantial evidence was sufficient to exclude every reasonable hypothesis except the defendant's guilt, the verdict will not be disturbed unless the verdict cannot be supported as a matter of law.

*Pattillo v. State*, 250 Ga. 510, 512 (299 SE2d 710) (1983). A conviction based upon circumstantial evidence is authorized only when the "proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis [but] that of the guilt of the accused." OCGA § 24-4-6. When it meets this test, circumstantial evidence is as probative as direct evidence, *Christmas v. State*, 171 Ga. App. 4, 7 (2) (318 SE2d 682) (1984), and "[w]hether this burden has been met is a question for the jury." *Doe v. State*, 189 Ga. App. 793, 795 (377 SE2d 546) (1989). Further, circumstantial evidence must only exclude every other reasonable hypothesis save the defendant's guilt, it need not exclude every possible inference or hypothesis. *Smith v. State*, 257 Ga. 381, 382 (359 SE2d 662) (1987).

After reviewing the evidence, we conclude that the jury rationally could have found from the circumstantial evidence that every reasonable hypothesis was excluded except that Hobbs committed these offenses, and the transcript reveals ample evidence from which any rational trier of fact could have found beyond a reasonable doubt that he was guilty of possessing amphetamine and GHB. *Jackson v. Virginia*, supra.

3. Hobbs contends the trial court erred by giving a charge on simple possession of these drugs as lesser included offenses of the crimes charged, possession with the intent to distribute. The record shows that Hobbs objected to giving a charge on simple possession of GHB, but requested that if the court was going to give a charge of simple possession of GHB that it also charge on simple possession of amphetamine as a lesser included offense. The court then decided to give charges on simple possession as lesser included offenses of both crimes charged, and gave both charges. We find no error.

On the charge of simple possession of GHB, the expert who tested the drug testified that the amount found could be used for personal possession, and this is sufficient evidence to authorize the simple possession charge. A jury charge is authorized by the evidence if there is some evidence from which a legitimate process of reasoning can be carried on in respect to the charge. *T. G. & Y. Stores Co. v. Waters*, 175 Ga. App. 884, 886 (2) (334 SE2d 910) (1985). Further, as Hobbs requested the charge on simple possession of amphetamine, he cannot complain of it now, *Locke v. Vonalt*, 189 Ga. App. 783, 787 (5) (377 SE2d 696) (1989), because induced error is not an appropriate basis for claiming prejudice. *Martin v. State*, 193 Ga. App. 581, 584 (2) (388 SE2d 420) (1989). Therefore the trial court did not err by charging on the lesser included offenses.

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED MARCH 11, 2005.

*Edenfield, Cox, Bruce & Classens, Michael J. Classens, Michael J. Walker,* for appellant.

*Richard A. Mallard, District Attorney, Joseph B. Black, Assistant District Attorney,* for appellee.