**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 20, 2016**

# In the Court of Appeals of Georgia

A16A0927. DEGEORGIS v. THE STATE.

RICKMAN, Judge.

Following a jury trial, David DeGeorgis was convicted of two counts of sexual exploitation of children for possessing both printed and electronic images depicting minors engaged in sexually explicit conduct. Prior to trial, DeGeorgis filed a motion to suppress the evidence seized during the execution of the warrants to search his computer equipment and residence, and he further moved to suppress a statement he made to the investigating officers conducting the search of his home. The trial court denied DeGeorgis's motions and admitted the evidence, which DeGeorgis asserts was error. We disagree and affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and the defendant no longer enjoys a presumption of innocence. We neither weigh the evidence nor judge

the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LEd2d 560) (1979).

(Citation omitted.) *Brown v. State*, 336 Ga. App. 428, 429 (785 SE2d 84) (2016).

So construed, the evidence shows that in August 2012, DeGeorgis's estranged wife brought a computer tower to the Holly Springs Police Department and expressed concern that she had discovered child pornography on its hard drive. Upon speaking to a police lieutenant, DeGeorgis's wife explained that she had recently moved out of her and DeGeorgis's marital home, but returned when she knew that DeGeorgis was absent in order to retrieve computer equipment used by DeGeorgis which she knew to contain sexually explicit pictures of herself. While later viewing images on the hard drive of one of the computer towers, she discovered what she believed to be child pornography and brought the tower to the police station. She requested that the lieutenant look at the computer's contents to confirm whether it contained unlawful material.

The lieutenant agreed to do so and after viewing some of the images, he also came to suspect that the computer contained child pornography. He thereafter took possession of the computer tower at issue, as well as a second computer tower and

two external hard drives that DeGeorgis's wife had also retrieved from the residence. The lieutenant obtained search warrants for each piece of equipment and requested that a forensic study of their contents be conducted.

At the same time that the lieutenant was in the process of obtaining the search warrants and releasing the towers and drives for forensic analysis, DeGeorgis filed a police report at the same police station in reference to the missing items. The lieutenant arranged to meet an unsuspecting DeGeorgis at his home the following day. Upon arrival, the lieutenant presented DeGeorgis with a search warrant for the residence, and he and a second officer proceeded to conduct the search while two additional officers remained outside for security.

The search focused primarily on an area of the garage that DeGeorgis had converted into a "man cave," and in which he spent the vast majority of his time. The area contained a myriad of locked boxes, drawers, and compartments. When asked, DeGeorgis informed the lieutenant that one of the locked cabinets contained a metal key box holding color-coded keys to each of the remaining locked containers, and he provided the lieutenant with a key to the cabinet. In one locked drawer, the lieutenant found numerous ziplock baggies containing womens' undergarments, each individually labeled with a female's name and a date. After being questioned about

the items, DeGeorgis admitted that they were "in his possession." The remaining locked containers contained a pornography collection so extensive that, once seized, it took law enforcement officers working in shifts almost two months to sift through its contents and to separate out the 28 printed images depicting child pornography that were ultimately tendered at trial.

A forensic study of the computer towers and of one of the external hard drives[1] also revealed an immense collection of "bizarre" pornography,[2] including 127 electronic images flagged by the forensic examiner as depicting naked pictures of underage minors.

DeGeorgis was charged with and convicted of two counts of sexual exploitation of children in violation of OCGA § 16-12-100 (b) (8).[2] He filed a motion for new trial, which the trial court denied. This appeal follows.

---

[1] The forensic examiner testified that the second external hard drive was defective and he was unable to image or copy any of its contents.

[2] The trial court suppressed details regarding the specific kinds of pornography not involving minors that was stored on the computers.

[2] "It is unlawful for any person knowingly to possess or control any material which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct." OCGA § 16-12-100 (b) (8).

1. DeGeorgis argues that the trial court erred in denying his motion to suppress the electronic images located on the computer equipment. Specifically, he contends that because his wife "was estranged, separated, and had reentered the marital residence without permission to take and view the computers," her consent to search the computer tower was void and the lieutenant's viewing of its contents was unlawful. DeGeorgis further asserts that the resultant search warrants for the remaining computer equipment and his residence amounted to fruit from the poisonous tree and were, thus, invalid.

It is well established, however, "that no illegal search and seizure occurs when a private citizen independently discovers contraband or other evidence of illegal conduct and then brings it to the attention of law enforcement." *Johnson v. State*, 231 Ga. App. 823, 825 (3) (499 SE2d 145) (1998); see *U. S. v. Jacobsen*, 466 U. S. 109, 113 (I) (104 SCt 1652, 80 LEd2d 85 (1984). Indeed, "[t]he protection afforded by the Fourth Amendment proscribes only governmental action and is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the government or with the participation of a government official." (Citation, punctuation, and footnote omitted.) *Hitchcock v. State*, 291 Ga. App. 455, 457 (2) (662 SE2d 155) (2008); see *Jacobsen*, 466 U. S. at 113 (1). In this

5

context, "[t]he Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated." *Jacobsen*, 466 U. S. at 117 (I); see *Hobbs v. State*, 272 Ga. App. 148, 150 (1) (611 SE2d 775) (2005) ("No Fourth Amendment violation exists when an individual's privacy is initially invoked by a private act, and any additional invasion of [a defendant's] privacy . . . is measured by the degree to which [the authorities] may have exceeded the scope of the private search.") (citations omitted).

Here, the evidence is uncontroverted that the lieutenant's initial viewing of the contents of the computer tower's hard drive occurred at the request of DeGeorgis's wife, the lieutenant was guided in his search by DeGeorgis's wife so as to view the files that she had already viewed, and the lieutenant looked at the images solely for the purpose of verifying whether the computer contained unlawful material. The lieutenant's initial search did not, therefore, amount to a violation of DeGeorgis's Fourth Amendment rights. See *Hobbs*, 272 Ga. App. at 150 (1) ("Discovery of the contraband by a private citizen and the verification of this evidence by the investigators . . . does not violate the Fourth Amendment."); *Hester v. State*, 187 Ga. App. 46, 47 (369 SE2d 278) (1988) (rejecting appellant's argument that his Fourth Amendment rights were violated when shop owner discovered what he suspected to

be narcotics while working on appellant's vehicle and reported the contraband to authorities); see also *Jacobsen*, 466 U. S. at 118-122 (II). After observing what he believed to be child pornography on the tower's hard drive, the lieutenant had probable cause to obtain search warrants for the remaining computer equipment and home. See generally *Henson v. State*, 314 Ga. App. 152, 154–55 (723 SE2d 456) (2012) (noting that an officer who discovered child pornography on appellant's laptop computer while searching its contents for evidence of a drug crime had probable cause to obtain additional search warrants for the phone and appellant's computer equipment because the facts supported a finding that "there [was] a fair probability that evidence of a crime [would] be found in a particular place") (punctuation and footnote omitted). The trial court, therefore, did not err in denying DeGeorgis's motion to suppress on that basis.

2. DeGeorgis further contends that the trial court erred in denying his motion to suppress his admission made during the search of his residence that he possessed the ziplock baggies containing womens' undergarments. He argues specifically that the statement was rendered involuntary because the lieutenant had allegedly taken his cellular phone and his car keys and he did not believe that he was free to leave at the time the statement was made.

We begin by noting that the trial court excluded both the actual question posed to DeGeorgis as well as DeGeorgis's detailed response to that question on the basis that they were unduly prejudicial. Thus, the evidence presented to the jury was limited solely to DeGeorgis's admission that the ziplocked undergarments found during the search were "in his possession." Nevertheless, DeGeorgis's representation of the facts surrounding his admission is belied by the record. The lieutenant seized DeGeorgis's cellular phone because it was specifically enumerated on the search warrant as an item that may contain evidence of a crime, and at no time did the lieutenant or any other law enforcement officer request or seize DeGeorgis's car keys. Rather, after being asked if he would produce keys to the myriad of locked containers in his "man cave" so as to avoid the officers cutting those locks, DeGeorgis voluntarily produced a key ring holding the key to a locked cabinet in which the remaining keys were stored. DeGeorgis now contends, without having produced any evidence in support, that the same key ring also held his car key.

Regardless, even assuming DeGeorgis's car key was inadvertently taken by the lieutenant, the record fully supports the trial court's ruling that DeGeorgis's admission to possessing the undergarments was voluntary. Although DeGeorgis was asked to remain outside the home for officer safety during the search, he was not

8

placed under arrest, was not confined in any way, and was never told that he could not leave. Indeed, the officers testified that had DeGeorgis attempted to leave during the search, he would have been permitted to do so. It follows that DeGeorgis failed to prove that his statement was involuntary. See *Quedens v. State*, 280 Ga. 355, 358-359 (2) (629 SE2d 197) (2006); see also *Bragg v. State*, 295 Ga. 676, 679 (4) (b) (763 SE2d 476) (2014).

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur.*