313 Ga. 451
FINAL COPY

S22A0289. HOOPER v. THE STATE.

ELLINGTON, Justice.

A jury found Timone Hooper guilty of murder, attempted armed robbery, and possession of a firearm during the commission of a crime arising out of a shooting that killed Lawrence Bryan and wounded Keron Brown.[1] On appeal, Hooper contends that he

---

[1] The attempted robbery and shooting occurred on August 7, 2015. On July 12, 2017, a Chatham County grand jury returned an indictment against Hooper for malice murder (Count 1), felony murder (Counts 2 through 5), attempted armed robbery against Bryan (Count 6), aggravated assault against Bryan (Counts 7 and 8), possession of a firearm by a convicted felon (Count 9), attempted armed robbery against Brown (Count 10), aggravated assault against Brown (Counts 11 and 12), and five counts of possession of a firearm during the commission of a crime (Counts 13 through 17). On February 20, 2019, the grand jury returned a superseding indictment charging Hooper, in addition to the 17 offenses charged in the original indictment, with three counts of terroristic threats with intent to retaliate against two of the State's witnesses and three counts of influencing a witness (Counts 18 through 23). At a trial that ended on August 23, 2019, a jury found Hooper guilty on Counts 1 through 17 and not guilty on Counts 18 through 23. The trial court sentenced Hooper to serve life in prison on Count 1, and to prison terms of 30 years on Count 6, ten years on Count 9, 30 years on Count 10, five years on Count 13 (possession of a firearm during the commission of Bryan's murder), and five years on Count 16 (possession of a firearm during the commission of the attempted armed robbery of Brown). The remaining counts were vacated as a matter of law or merged with other counts for sentencing purposes. Hooper

received ineffective assistance based on his counsel's failure to request a jury instruction on the requirement that confessions be corroborated, and he contends that the trial court plainly erred in failing to give that instruction sua sponte. Hooper also contends that the trial court violated his constitutional right to a public trial by excluding spectators from the courtroom in order to question a juror about her acquaintance with a potential witness. For the reasons explained below, we affirm.

Pertinent to Hooper's arguments on appeal, the evidence presented at trial showed the following. Brown, the surviving victim, testified as follows. On the night of August 6, 2015, Brown and Bryan, who were longtime close friends, went to an apartment on Duane Court in Savannah to gamble. Brown and Bryan, who was known as "LB," were at the apartment "shooting dice" with several other people until around midnight. After Brown and Bryan exited

filed a timely motion for new trial, which he amended on January 28 and February 10, 2020. The trial court conducted a hearing on the motion on February 11, 2020, and denied the motion on September 1, 2021. Hooper filed a timely notice of appeal. The case was docketed in this Court to the term beginning in December 2021 and submitted for a decision on the briefs.

the apartment, two people ran toward them, as if intending to tackle them. The unknown men wore dark clothing, their faces were covered, and both had guns. Brown struggled with one of the men, and they both fell to the ground. The man got up and fired his gun at Brown as he ran away, striking Brown in the chest. Brown heard 10 to 12 more gunshots and then ran through the driveway between buildings to find Bryan. Bryan was sitting on the ground, his shirt bloody. At 12:37 a.m., Brown called 911 with Bryan's phone and yelled for others in the apartment to come help him.

Rickardoe Sabb testified as follows. Sabb had been gambling with Brown and Bryan that night. Just after Brown and Bryan left the apartment, Sabb heard eight to ten gunshots and then heard Brown yelling for help. Sabb went to assist and helped the wounded men into Bryan's car. Bryan collapsed on the way to the hospital and was later pronounced dead as a result of a gunshot wound to the chest.

Officers responding to the 911 call completely blocked off Duane Court until 7:00 to 7:30 the following morning, August 7.

3

Investigators collected six 9mm shell casings in the area of the shooting, which a firearms examiner testified had all been fired from the same Glock 9mm pistol. Four bullets were collected during Bryan's autopsy; they were also consistent with being fired from a Glock 9mm pistol.

Tiffany Chisholm testified as follows. In August 2015, she was dating Hooper, and he usually stayed at her apartment and sometimes drove her car, a gold 2007 Chevy Malibu. Hooper was driving Chisholm's car on the night of the shooting. When Hooper did not return to Chisholm's apartment at the expected time that night, she sent him a text message asking where he was, and he responded that he could not move her car because the road was blocked off. He returned to her apartment at about 8:00 a.m. on August 7. After Bryan's murder, Chisholm found a black mask and a black hoodie in the back of her car.

An investigator testified that the only road closure in Savannah on the night of the shooting was Duane Court for the crime scene investigation at issue. Cell site location data showed

that, at almost the same time as the attempted robbery, Hooper's cell phone placed a call from the area of the shooting. Crime scene photos, taken while Duane Court was blocked for the investigation, depict a vehicle that is consistent with Chisholm's Chevy Malibu parked near the apartment where the victims gambled that night. Chisholm also informed detectives that Hooper was supposed to be at work at 8:00 a.m. on August 7, not long after the road was reopened. Hooper's work receipts showed that he did not actually clock into work until 9:03 that morning.

On October 30, 2015, Hooper was arrested on other charges while he was driving Chisholm's car. Chisholm testified that, following Hooper's arrest, during a phone call that was being recorded, Hooper told her that police officers had her car and were searching it. This prompted Chisholm to ask Hooper if there was anything in her house that she "need[ed] to worry about." Hooper responded that she "needed to check [her] bed and the closet." Chisholm checked those areas the next day and took a gun hidden in the box spring under her mattress and a gun magazine that was

5

in the closet. Chisholm testified, "He called me [again]. I was supposed to, once I got the gun out of my house, he told me to give it to his friend Los." Chisholm removed the gun and the magazine from her apartment, just before officers arrived to search her apartment. Chisholm went to a nearby relative's house; Hooper's friend, "Los," met her there; and she gave Los the gun and magazine.[2] Chisholm described the gun as a "regular gun" as opposed to a revolver.

Britney Boston testified as follows. For many years before Bryan's murder, Boston knew Hooper from living in the same neighborhood. Some weeks after Bryan's murder, Boston overheard Hooper discuss an attempted robbery with his friend "Los," and Hooper said that he "took LB's life." Boston heard Hooper say that one of the men they were robbing grabbed him, they "tussled" and went "to the ground," and he shot the man. Boston told a detective what she had heard, and she picked Hooper out of a photographic lineup as the person she overheard talking about killing Bryan.

---

[2] In the July 12, 2017 indictment charging Hooper with murder and other charges, Chisholm was charged with tampering with evidence. She entered a guilty plea to that charge and agreed to testify in Hooper's trial.

Boston also identified Hooper at trial.

Malika Spencer testified as follows. She contacted the police and informed detectives that, on September 16, 2015, as she was sitting on some exterior stairs in the Fred Wessels Homes complex in Savannah, she overheard four men talking about a murder. Spencer overheard one man, later identified as Hooper, tell the other men that it was a robbery that "went bad" when the victim would not "give it up" and grabbed Hooper, they "kind of tussled," and Hooper shot the victim, because "he didn't have a choice."[3] Spencer was angry that Hooper was "bragging" about shooting the victim "like it was just another day." Spencer later picked Hooper out of a photographic lineup as the individual she overheard talking about the shooting. Spencer also identified Hooper at trial. Cell site location data for Hooper's phone records placed his phone, at the time Spencer heard Hooper talking about the attempted robbery and the shooting, near the location where she heard him make the

_____

[3] Spencer testified that she asked Boston, her friend whom she was visiting that evening, who the men were, and Boston identified the man Spencer heard telling about the shooting as Hooper.

statements.

Henry Watson testified as follows. While Watson was Hooper's cellmate in federal prison in Jesup, Hooper told Watson that he had been involved in a murder where he tried to rob the victim, he and the victim "had a tussle, a squabble, and he had to wind up shooting him." He told Watson that he was going to "beat the [murder] charge" because he was wearing a mask during the attempted robbery, so witnesses could not identify him, and because he was wearing gloves and washed his hands with tomato juice after the shooting to remove any gunpowder. Hooper also told Watson that he was in a brown 2010 Malibu that night and that he used a 9mm gun, which "he like[d] to get up close and personal with."

On October 31, 2015, the day after Hooper was arrested on federal charges, a search warrant was executed at Chisholm's apartment. In two shoe boxes in Chisholm's bedroom closet, investigators found a gun holster, a Glock backstrap, a Glock 9mm extended magazine, work receipts with Hooper's name on them, and multiple latex gloves. Investigators also located black-colored men's

clothing in Chisholm's bedroom. Investigators searched Chisholm's car and located a fully loaded .45-caliber pistol, a black bucket hat, a black hoodie, a black jacket with latex gloves in the pocket, a black bandana, more of Hooper's work receipts, and a pair of dice.

Hooper's and Chisholm's cell phone records showed that their phones exchanged text messages on the night of the murder. Cell site location data showed that, shortly after Bryan's murder, Hooper's and Chisholm's phones were not together and that Hooper's phone was in the area of the crime scene. At 5:24 a.m., when Duane Court was blocked, Hooper's phone texted Chisholm's phone, "Ill be there i cant move the car yet," and she asked where he was. Hooper's phone responded, "They still got that sh*t block off im on skiddaway tho." An investigator testified that Skidaway Road is near Duane Court. At 8:06 a.m., shortly after the roadblock ended, Hooper's phone texted Chisholm's phone that he was on the way.

Hooper was interviewed by detectives on January 31, 2017, while he was in federal prison. In his interview, Hooper denied being in the area of the crime scene around the time of the murder. He did

confirm that the 9mm magazine, black clothes, and gloves that were found in Chisholm's apartment and car were his.

1. Hooper contends that he received ineffective assistance of counsel because his attorney failed to request a jury instruction on the statutory requirement that a confession must be corroborated to support a conviction. See OCGA § 24-8-823 ("A confession alone, uncorroborated by any other evidence, shall not justify a conviction.").

To establish ineffective assistance of counsel, a defendant must show that his trial counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). The defendant must also show that the deficient performance prejudiced the defense, which requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694 (III) (B). "A reasonable probability is

a probability sufficient to undermine confidence in the outcome." Id. If an appellant fails to show either deficiency or prejudice, this Court need not examine the other prong of the *Strickland* test. See *DeLoach v. State*, 308 Ga. 283, 287-288 (2) (840 SE2d 396) (2020).

Hooper contends that "a proper instruction on the State's main evidence" — his confessions — "reasonably could have led to a different result" because there were no eyewitnesses who identified him as a participant in the shooting. Although a confession alone cannot sustain a conviction, "no specific manner of corroboration of the confession is required, and corroboration in any particular is sufficient." *Muckle v. State*, 302 Ga. 675, 679 (1) (b) (808 SE2d 713) (2017) (citation and punctuation omitted). In this case, even accepting Hooper's premise that his statements about the attempted robbery and shooting were confessions, his statement that he "took LB's life" was corroborated by testimony that the decedent, Bryan, was known as "LB." Hooper's description in his statements regarding a "tussle" during the attempted armed robbery that led to the shooting was echoed and corroborated by Brown's eyewitness

11

testimony. Hooper's statement that a 9mm handgun was his choice of weapon "to get up close and personal with" was corroborated by Brown's testimony that the robbers rushed at him and Bryan as if to tackle them, by evidence that the murder weapon was a 9mm Glock pistol, and by evidence that 9mm pistol accessories were found in Chisholm's closet. Hooper's statement that he could beat a murder charge because he had worn a mask was corroborated by Brown's eyewitness testimony about the assailants' masks and by evidence that, in the days after the shooting, Chisholm found a black bandana in her car, which Hooper had driven on the night of the shooting. This evidence was sufficient to corroborate Hooper's confessions under the applicable standard. See id.

In addition, the State presented other strongly inculpatory evidence, which included Hooper's communications with Chisholm in the minutes and hours after the shooting that he was unable to drive home because the street was blocked. These communications dovetailed with an investigator's testimony that the street where the shooting occurred was the only one blocked in Savannah that night

and with cell site location data that placed Hooper's phone in that area at the time of the shooting. The evidence was further strengthened by Hooper's warning to Chisholm, while investigators were en route to search Chisholm's apartment, that she needed to check her bed, where she found his gun and disposed of it before it could be seized, and by items seized from Chisholm's closet, including accessories for a Glock 9mm pistol, the murder weapon. Because several particulars of Hooper's statements were corroborated, and particularly in light of the strength of the State's evidence as a whole, he fails to show a reasonable probability of a different outcome, if the corroboration jury instruction had been requested and given. See *Muckle*, 302 Ga. at 679 (1) (b). Hooper's ineffective assistance claim therefore fails.

2. In a related argument, Hooper contends that the trial court was required, even absent a request, to instruct the jury on the statutory requirement that confessions be corroborated and that the failure to do so sua sponte was plain error.

"To show plain error, the appellant must demonstrate that the

13

instructional error was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Clarke v. State*, 308 Ga. 630, 637 (5) (842 SE2d 863) (2020) (citation and punctuation omitted). "Satisfying all four prongs of this standard is difficult, as it should be. The Court need not analyze all of the elements of the plain error test when the appellant fails to establish one of them." *Hood v. State*, 311 Ga. 855, 866 (2) (860 SE2d 432) (2021) (citations and punctuation omitted).

As to the third element, Hooper contends that the instructional error likely affected the outcome of the proceedings, because the trial court's incomplete instruction "left the jury in the dark" about "the important requirement" that testimony that he made admissions of guilt after the event "had to be corroborated before [that testimony] could establish [his] guilt[.]" We conclude, however, that Hooper cannot satisfy the third prong of the plain error test by showing that the trial court's failure to give the jury instruction sua sponte on

14

corroboration of a defendant's confession likely affected the outcome of the trial court proceedings, because there was ample corroborating evidence at trial, as well as additional supporting evidence, as explained above in Division 1. See *Clarke*, 308 Ga. at 637 (5); *English v. State*, 300 Ga. 471, 474-475 (2) (796 SE2d 258) (2017).

3. Hooper contends that his convictions should be reversed because the trial court violated his right to a public trial under the United States and Georgia Constitutions by clearing the courtroom of spectators, at the State's request, to question a juror who sent a note to the judge indicating that she was acquainted with a witness who was in the gallery.[4]

The improper closing of a courtroom is a structural error that

---

[4] See U. S. Const., Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed[.]"); Ga. Const. of 1983, Art. I, Sec. I, Par. XI ("In criminal cases, the defendant shall have a public and speedy trial by an impartial jury[.]"); *Waller v. Georgia*, 467 U. S. 39, 48 (II) (B) (104 SCt 2210, 81 LE2d 31) (1984) ("[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.").

requires reversal only if the defendant properly objects at trial and later raises the issue on direct appeal. See *Morris v. State*, 308 Ga. 520, 530 (5) (842 SE2d 45) (2020). Because the record reflects that Hooper did not make a contemporaneous objection to the exclusion of spectators from the courtroom during questioning of the juror, he has waived his right to appellate review of the trial court's action. See id.

*Judgment affirmed. All the Justices concur.*

Decided March 8, 2022.

Murder. Chatham Superior Court. Before Judge Morse.

*Robert L. Persse*, for appellant.

*Shelena Cook Jones, District Attorney, Jillian H. Gibson, Bradley R. Thompson, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Leslie A. Coots, Assistant Attorney General*, for appellee.