**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 27, 2023**

# In the Court of Appeals of Georgia

A23A0028. JOHNSON v. THE STATE.

PHIPPS, Senior Appellate Judge.

A jury found Terrell Johnson guilty of rape and other crimes that were perpetrated against his two young female cousins and recorded on his cell phone. Following the denial of his motion for new trial, Johnson appeals, claiming that the evidence was insufficient to support some of his convictions and that he received ineffective assistance of trial counsel. We find no merit in these arguments, and we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the

factfinder, not this Court. As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.

*Stillwell v. State*, 329 Ga. App. 108, 108 (764 SE2d 419) (2014) (citation and punctuation omitted).

So viewed, the record shows that Johnson lived with his girlfriend in a Fulton County apartment. One day in May 2007, Johnson's girlfriend was "going through his phone" when she saw a preview of a video panning over someone's unclothed buttocks. Johnson "snatched" the phone away and said his girlfriend could not see the video because it showed a friend of his "doing something with a minor." Two to three weeks later, in June 2007, Johnson's girlfriend took his cell phone while he was sleeping. She opened the video she had seen previously and realized it depicted a child. The girlfriend also found three other videos involving that child and another — both girls who appeared to be under the age of ten and whom Johnson's girlfriend did not recognize.

Feeling "really, really nervous," the girlfriend called a child abuse hotline and was eventually transferred to a police detective. The girlfriend told the detective that her boyfriend's cell phone contained video clips of "little girls being messed with .

. . by an adult" who "had his penis out and . . . was trying to stick it inside . . . one of the girls." At the detective's request, the girlfriend left the apartment with the cell phone and met him outside, where they watched the four video clips together.

The first video shows a young girl standing on a yellow chair and pulling her skirt and underwear down to expose her buttocks. A man touches the girl's buttocks, and at his request, she spreads them apart. The second and third videos show the same girl lying on her stomach and spreading her buttocks apart. In the third video, the man rubs his erect penis across her anus. The fourth video, which is the longest clip, begins by showing a second girl lying on her stomach while the man rubs his penis along her buttocks and uses his hand to spread them open. The second girl then lies on her back while the man rubs his penis along her labia. The girl says "ow" and the man responds, "I know that hurt." The girl's labia are then spread open and the man places his penis inside. Later, the girl kneels while the man again rubs his penis over her anus. The man's face is not shown in any of the videos.

After watching the videos with the detective, Johnson's girlfriend was able to identify the voice of the man on the videos as belonging to Johnson. She also recognized his hands, penis, and shirt from the videos. The girlfriend later asked

Johnson why he "d[id] it" and "his response was that [the girls] wanted to learn about sex."

The detective took Johnson's cell phone and obtained a warrant to search it. He captured some still photos from the videos showing the girls' faces and the yellow chair from the room where the incident occurred. In an effort to identify the girls, the detective showed the photos to residents of the apartment complex where Johnson lived, but no one recognized them. After learning that Johnson's sister lived in an apartment below Johnson's, the detective went there. Johnson's sister let the detective inside, and he immediately recognized the yellow chair from the videos. The detective showed Johnson's sister the still photos of the girls, and she eventually told him that they were her cousins from California who had visited for two or three days. The detective later ascertained that the girls were sisters D. J., who was then five years old, and S. J., who was four.

While the detective was at Johnson's sister's apartment, Johnson walked in, and the detective arrested him. Later, at the police station, Johnson signed a waiver of counsel. He then told the detective that he had recorded the videos while playing with his cousins at his sister's apartment, and he admitted that he was the man in the videos. Johnson was charged with raping S. J., molesting each girl by "placing [his]

4

male sex organ upon [her] female sex organ," and sexually exploiting each girl by using her "to engage in sexually explicit conduct for the purpose of producing a visual medium depicting such conduct."[1]

The case proceeded to trial, where the girls' mother testified that she and the girls had stayed with Johnson's sister during a visit to Atlanta in May 2007. About a month after the visit, prompted by a call from the girls' grandmother, the mother questioned the girls separately about whether "anybody [had] touch[ed] them on their body anywhere." D. J. told her mother that Johnson had touched her, and S. J. indicated that Johnson had touched her vagina and rectum.

The mother brought the girls back to Georgia, where they underwent forensic interviews and medical examinations. The physician who examined the girls testified that their examinations were "normal," which was "expected with a remote history of sexual assault"; that penetration can occur without injury because "[t]he tissues are very elastic"; and that, even if injury does occur, children can heal "very, very quickly within days" and without scarring.

---

[1] Johnson was also charged with raping D. J., but the trial court directed a verdict of acquittal on that charge.

5

The four video clips from Johnson's cell phone were played for the jury, along with videos of the girls' forensic interviews and Johnson's custodial statement. D. J. and S. J. were present at trial and took the stand, but neither the prosecutor nor defense counsel asked them any substantive questions. After the State rested, Johnson elected not to testify or present evidence. During his closing argument, defense counsel conceded that "there's no question whatsoever those two young girls were molested sexually," but he argued that it was not clear that actual penetration had occurred to support the rape charge or that Johnson was the perpetrator of any of the acts.

The jury found Johnson guilty of all of the remaining charges,[2] and the trial court sentenced him to a total of life imprisonment plus 20 years. Johnson filed a motion for new trial, which the trial court denied.[3] He now appeals.

1. Johnson argues that the evidence was insufficient to support his convictions for molesting both girls and raping S. J. We conclude that the evidence was sufficient.

---

[2] See note 1.

[3] However, the court agreed with Johnson's argument that he should have received a split sentence, ruling that it would "issue a new sentence that conforms to OCGA § 17-10-6.2."

6

(a) *Molestation of D. J.* Johnson contends that the evidence was insufficient in several respects to support his conviction for molesting D. J.

(i) First, he argues that the State failed to show that he intended to arouse or satisfy his or D. J.'s sexual desires, a necessary element of child molestation,[4] because no evidence contradicted his statement to his girlfriend that he made the videos because the girls wanted to learn about sex. We disagree.

"The question of intent is peculiarly a question of fact for determination by the jury, which may infer a defendant's intent from the evidence presented at trial." *McMurria v. State*, 359 Ga. App. 558, 560 (1) (859 SE2d 530) (2021) (citation and punctuation omitted). The jury may find the requisite intent "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act[.]" OCGA § 16-2-6. Further, the jury is authorized to discredit the defendant's statements about his motivations and find, instead, that the defendant possessed the requisite criminal intent. See *Sapp v. State*, 273 Ga. 472, 473 (543 SE2d 27) (2001) (rejecting defendant's argument that "his trial testimony constituted unrebutted

_____

[4] See OCGA § 16-6-4 (a) (1) (child molestation occurs when a person "[d]oes an immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person").

7

evidence that he lacked the malice necessary for murder"). "Where the jury finds the requisite intent, that finding will not be reversed on appeal provided there is some evidence supporting the jury's inference." *McMurria*, 359 Ga. App. at 560 (1) (citation and punctuation omitted).

Here, the evidence showed that Johnson committed the acts while he was alone with the girls, that he continued trying to penetrate one of them despite her complaint of pain, that he made video recordings of the acts, and that he kept the videos on his phone even after his girlfriend discovered one. And while "[t]he child molestation statute does not require proof of the defendant's actual arousal," *Brown v. State*, 324 Ga. App. 718, 720 (1) (751 SE2d 517) (2013) (citation and punctuation omitted), the videos on Johnson's phone showed that he had an erection during the acts. Under these circumstances, there was sufficient evidence to support the jury's determination that Johnson had the requisite intent to molest D. J. See *McMurria*, 359 Ga. App. at 560 (1) (jury could infer defendant's intent to arouse or gratify his sexual desires from his act of exposing himself to a child); *Andrew v. State*, 216 Ga. App. 427, 427-428 (454 SE2d 542) (1995) (evidence that defendant "tickled [the victim's] vagina" and pressed an object against it was sufficient to establish his intent to gratify his sexual desire).

(ii) Johnson also argues that the children's mother viewed the videos from Johnson's cell phone and "did not see the acts [they] described." This assertion, however, mischaracterizes the mother's trial testimony. The mother testified that when she first questioned D. J., the girl said Johnson had touched and "humped" her.[5] The mother explained that in her mind, "the meaning of humping is with your clothes on." But when the mother eventually watched the cell phone videos shortly before trial, she saw her daughters "spreading their vagina, spreading the[ir] buttocks apart," and engaging in sexual acts that did not meet the mother's definition of "humping." Contrary to Johnson's implication, the mother's testimony does not show that he did not molest D. J.; if anything, it indicates that the molestation went further than she originally thought.

(iii) Finally, Johnson complains that "a rational trier of fact cannot tell which child is depicted in the various clips on the cell phone video[s] as the child's head is not in view." However, as the State points out, the girls are distinguishable by their different clothing and hairstyles and, in any event, the videos show the perpetrator molesting each girl, separately. This argument lacks merit.

---

[5] On cross examination, the mother clarified that the girls had not actually used the word "humped"; rather, they said Johnson had "touched" them.

9

(b) *Rape of S. J.* Johnson argues that there was insufficient evidence that he raped S. J. because, again, "[t]he video only showed the genitals of the child victim and the perpetrator; it did not show the face of the defendant." This argument fails.

To the extent Johnson challenges the evidence of the identity of the rape victim, the fourth video shows the perpetrator inserting his penis between the labia of one of the girls. The police detective captured still photos of this girl, whom the mother identified at trial as S. J. Further, during his custodial interview, Johnson told the detective that he touched D. J. first, followed by S. J., thereby confirming — based on the sequence of events shown in the videos — that S. J. was the girl who was raped.

To the extent Johnson challenges the sufficiency of the evidence establishing the identity of the perpetrator of the rape, the videos were found on his cell phone; his girlfriend identified him as the man in the videos based on his voice, shirt, and penis; and he admitted to the detective that he was the man depicted in the videos. This evidence was sufficient to establish Johnson's identity as the perpetrator of the rape.

(c) *Molestation of S. J.* Johnson contends that there was insufficient evidence that he acted with the requisite criminal intent to molest S. J. For the reasons explained above in Division 1 (a) (i), this argument fails.

10

2. Johnson argues that he received ineffective assistance of counsel because his trial attorney did not move to suppress the videos found on his cell phone and did not submit written requests for certain jury charges. We find no merit in these claims.

In evaluating a claim of ineffective assistance of counsel, we apply the familiar, two-pronged *Strickland v. Washington*[6] analysis, in which a defendant must show that "his trial counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different." *State v. Walker*, 350 Ga. App. 168, 171 (828 SE2d 402) (2019) (citation and punctuation omitted). "If an appellant fails to show either deficiency or prejudice, [an appellate court] need not examine the other prong of the *Strickland* test." *Hooper v. State*, 313 Ga. 451, 455 (1) (870 SE2d 391) (2022).

(a) Johnson maintains that his trial counsel was deficient for failing to move to suppress the cell phone videos because (i) the police detective's initial viewing of the videos, after Johnson's girlfriend brought him the phone, occurred without a warrant, and (ii) the warrant later obtained by the detective was invalid because it was not supported by an affidavit. As an initial matter,

---

[6] 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

11

the failure to file a motion to suppress does not automatically constitute ineffective assistance of counsel. Rather, the defendant has the burden of making a strong showing in the trial court that the evidence would have been suppressed had a motion to suppress been filed. This is because it is not ineffective assistance of counsel to refrain from making a futile motion or filing a meritless motion to suppress.

*Walker*, 350 Ga. App. at 173-174 (2) (citations and punctuation omitted). Based on the record before us, we conclude that Johnson has not made a strong showing that a motion to suppress would have been successful.

(i) *Police detective's initial viewing of the cell phone videos*. Johnson contends that suppression was required because his girlfriend had no right to confiscate his phone, open videos that were not in plain view, and share them with the police. This argument, however, is foreclosed by our decision in *DeGeorgis v. State*, 339 Ga. App. 25 (793 SE2d 101) (2016). There, the defendant's estranged wife was searching her husband's computer while he was not at home when she found images that she suspected were child pornography. Id. at 26. The wife brought the computer to the police station, where a lieutenant viewed the images and agreed with the wife's suspicions. Id. The lieutenant obtained a search warrant for the computer, and the defendant was later arrested and convicted of sexual exploitation of children. Id. at

12

26-27. On appeal, we rejected the defendant's argument that the trial court should have suppressed the evidence from his computer, ruling as follows:

> It is well established . . . that no illegal search and seizure occurs when a private citizen independently discovers contraband or other evidence of illegal conduct and then brings it to the attention of law enforcement. Indeed, the protection afforded by the Fourth Amendment proscribes only governmental action and is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the government or with the participation of a government official.

Id. at 28 (1) (citations and punctuation omitted).

Johnson suggests that his girlfriend was acting as a government agent because she agreed to meet the police detective outside the apartment to show him the cell phone videos. It is true that "the State cannot avoid a Fourth Amendment challenge to a search and seizure by asking a private citizen to act on its behalf and seek out evidence." *Johnson v. State*, 231 Ga. App. 823, 825 (3) (499 SE2d 145) (1998); see id. at 825-826 (3) ("the State became involved in the search and seizure of the items at issue" when the assistant district attorney asked the defendant's wife to search the

13

house for "dirty magazines" and call him if she found anything).[7] "The test is whether the private individual, in light of all the circumstances of the case, must be regarded as having acted as an instrument or agent of the government when he produced the evidence." Id. 825 (3) (citation and punctuation omitted).

In *DeGeorgis*, we held that the lieutenant's initial review of the defendant's computer did not violate the defendant's Fourth Amendment rights because that review "occurred at the request of DeGeorgis's wife, the lieutenant was guided in his search by DeGeorgis's wife so as to view the files that she had already viewed, and the lieutenant looked at the images solely for the purpose of verifying whether the computer contained unlawful material." 339 Ga. App. at 28 (1). Similarly, in this case, the detective's initial viewing of the videos on Johnson's cell phone occurred at Johnson's girlfriend's behest, was limited to material the girlfriend had already viewed privately, and was undertaken to verify the girlfriend's allegations of unlawful content. While Johnson's girlfriend did not bring the cell phone directly to a police station, but instead met the detective outside the apartment, we conclude that her

---

[7] Despite the State's involvement, we affirmed the trial court's denial of the defendant's motion to suppress items the wife found on another basis — "because [the] wife also lived in the marital residence and had common authority over it and its contents." *Johnson*, 231 Ga. App. at 826 (3). In this case, the State does not seek to justify the detective's preliminary review of Johnson's phone on that basis.

14

agreement to the detective's logistical suggestion of a meeting place did not transform her into a government agent. Under the circumstances of this case, Johnson has shown no violation of his Fourth Amendment rights. Id.; see also *Hobbs v. State*, 272 Ga. App. 148, 150 (1) (611 SE2d 775) (2005) ("Discovery of the contraband by a private citizen and the verification of this evidence by the investigators . . . do not violate the Fourth Amendment."); *Hester v. State*, 187 Ga. App. 46, 47 (1) (369 SE2d 278) (1988) ("There is no Fourth Amendment violation where an individual's privacy is initially invaded by a private act."). It follows that a motion to suppress on this basis would have been meritless, and Johnson's trial counsel was not ineffective for failing to file one. See *Walker*, 350 Ga. App. at 174 (2).

(ii) *Missing search warrant affidavit.* Johnson also argues that trial counsel should have filed a motion to suppress because no affidavit was submitted in support of the State's application for a warrant. As Johnson notes, if a defendant files a motion to suppress challenging the legality of a search warrant, the State generally must produce "the affidavit and other evidence showing the validity of the warrant[.]" *Smith v. State*, 324 Ga. App. 542, 545 (1) (751 SE2d 164) (2013). Johnson assumes no affidavit existed in this case, and that a motion to suppress therefore would have been successful, because defense counsel's file did not contain an affidavit, and the

15

State did not produce one at the hearing on Johnson's motion for new trial. As stated previously, it is the defendant's burden to make a "strong showing" that a motion to suppress would have been granted had it been filed. See *Walker*, 350 Ga. App. at 173-174 (2). Under the facts of this case, Johnson has failed to make that showing.

Although no copy of a supporting affidavit appears in the current appellate record, the search warrant, which was signed and issued by a magistrate judge, states that the applicant police detective provided an affidavit indicating that he had reason to believe Johnson's cell phone contained evidence of child pornography. In light of this language in the warrant, we presume that the detective did, in fact, provide an affidavit to support his application for a search warrant. See *Baptiste v. State*, 288 Ga. 653, 655 (2) (706 SE2d 442) (2011) (where warrants "contain the issuing judge's acknowledgment that the investigator made an affidavit before the issuing judge and that the affidavit was given under oath . . . there is no question that search warrants were issued based on affidavits signed and sworn to by the investigator before the issuing judge"). Thus, it appears from the record that an affidavit did exist, at least when the warrant application was made, but went missing at some point thereafter.

16

At the hearing on Johnson's motion for new trial, his trial counsel testified that although he could not recall details of this case due to the passage of time,[8] his practice was to review "supporting documentation in connection with [a search warrant] in order to make an assessment concerning whether a suppression motion should be filed[,]" and he had no reason to believe he deviated from that practice here. Trial counsel further testified that he had no reason to doubt that the warrant application in this case included an affidavit. Notably, trial counsel was Johnson's second attorney in this case, and the record shows that after trial, Johnson was represented by no fewer than nine different lawyers. Given the number of times Johnson's case file apparently was passed around during the 11 years between his trial and the hearing on his motion for new trial, it is entirely possible that the affidavit was lost at some point during that interval. Under these circumstances, Johnson has not made a strong showing that the State would have been unable to produce the affidavit at a pretrial suppression hearing.

Even if Johnson could show that the affidavit was lost before trial, such that the State could not have produced it at a suppression hearing, it does not follow that

_____

[8] Johnson was tried in 2010, but the hearing on his motion for new trial did not occur until 11 years later, in 2021.

17

Johnson would have prevailed on a motion to suppress based on a missing affidavit. See *Prince v. State*, 295 Ga. 788, 791 (2) (a) (764 SE2d 362) (2014) ("[t]he lack of a signed affidavit in the record . . . does not necessarily result in the granting of a motion to suppress"). This is because "secondary documentary evidence . . . and the testimony of the officer" may be used at a suppression hearing to establish the contents of a missing original affidavit. Id. See also *Baptiste*, 288 Ga. at 656 (2) (where the State could not produce search warrant affidavits at suppression hearing, trial court did not err by relying on "the testimony of the investigator as to the contents of the missing affidavits"); former OCGA § 24-5-21 ("[I]f a paper shall have been lost or destroyed, proof of the fact to the court shall admit secondary evidence.").[9] In this case, the detective — who testified at trial — presumably could have testified at a pretrial suppression hearing as to the contents of his affidavit. Thus, even if Johnson could establish that the affidavit went missing before trial, he has not made a strong showing that this circumstance would have necessitated the suppression of the evidence from his cell phone.

_____

[9] Johnson was tried before the effective date of Georgia's "new" Evidence Code. See generally *Parker v. State*, 296 Ga. 586, 588 (1) (769 SE2d 329) (2015) (Georgia's new Evidence Code applies to any motion made or hearing or trial commenced on or after January 1, 2013).

(b) Johnson asserts that his trial counsel also was ineffective for failing to make a written request for certain jury charges.

> When a claim of ineffective assistance is based on the failure to request a jury charge, the relevant inquiry is whether the charge, if it had been requested, was warranted by the evidence, and if it had been given, whether there is a reasonable probability that it would have changed the outcome of the trial.

*Bradley v. State*, 322 Ga. App. 541, 545 (3) (a) (745 SE2d 763) (2013) (citation and punctuation omitted). Applying this standard to Johnson's claims, we find no ineffective assistance.

(i) *Corroboration needed for a confession.* First, Johnson faults defense counsel for not requesting a jury charge that a defendant's uncorroborated confession is insufficient to justify a conviction. See OCGA § 24-8-823 ("All admissions shall be scanned with care, and confessions of guilt shall be received with great caution. A confession alone, uncorroborated by any other evidence, shall not justify a conviction."). Pretermitting whether counsel's failure to request this charge was error, Johnson shows no prejudice.

"Although a confession alone cannot sustain a conviction, no specific manner of corroboration of the confession is required, and corroboration in any particular is

19

sufficient." *Hooper*, 313 Ga. at 455-456 (1) (citation and punctuation omitted). Here, Johnson's admission to the police that he was the man in the videos was corroborated by multiple other pieces of evidence, most significantly his girlfriend's identification of him as the man in the videos and the victims' statements that he had touched them. In light of this corroborating evidence, Johnson "has not shown that his trial counsel's failure to request a jury charge on confessions and admissions was prejudicial to his defense." *Armstrong v. State*, 325 Ga. App. 33, 37-38 (3) (752 SE2d 120) (2013). See also *Hooper*, 313 Ga. at 456 (1) ("Because several particulars of [the defendant's] statements were corroborated, and particularly in light of the strength of the State's evidence as a whole, he fails to show a reasonable probability of a different outcome, if the corroboration jury instruction had been requested and given.").

(ii) *Attempted rape as a lesser included offense.* Johnson also asserts that his trial counsel was ineffective for failing to request, in writing, a charge on attempted rape as a lesser included offense of rape. The record shows, however, that counsel orally requested this charge. The trial court considered the request on the merits, but rejected it because — among other reasons — it "flies in the face of the evidence." "Although the trial court elected not to give the instructions, [Johnson] did not enumerate that ruling as error, and he has not shown how the alleged lack of a written

20

request prejudiced his defense." *Taylor v. State*, 296 Ga. App. 212, 220 (9) (b) (674 SE2d 81) (2009).

Even if the trial court had not considered the charge on the merits, however, we find no error in counsel's failure to request it in writing. As Johnson points out, his trial counsel testified at the motion for new trial hearing that he should have requested the charge in writing because "you want the jury to have a mechanism to cut losses for the defendant." However, counsel also testified that his main defense was that the perpetrator was someone other than Johnson:

> [T]here wasn't really a meaningful argument to make concerning the premise that this was attempted rape and not rape. It looked clear to me it was rape and the better argument was that you can't tell it's my client who is committing the rape. It could be someone else. You can't see his face so how do you know it's him as opposed to arguing that, well, this isn't really rape. So based on my assessment of the video footage, clearly these two kids are being raped and the bigger issue was who [was] doing the rape?

Thus, counsel conceded, an attempt charge "probably didn't fit the facts of the case."

Indeed, the fourth video on Johnson's phone showed S. J.'s labia being held open while the perpetrator placed his penis inside. Under Georgia law,

21

[p]enetration of the female sex organ by the male sex organ is a required element of the offense of rape. But the necessary penetration need be only slight; it is not necessary that the vagina shall be entered, but an entering of the anterior of the organ, known as the vulva or labia, is sufficient.

*Smith v. State*, 361 Ga. App. 436, 438 (1) (a) (864 SE2d 645) (2021) (citations and punctuation omitted). Thus, as stated by Johnson's trial counsel, the evidence showed rape, not attempted rape. "[T]he failure to request a jury instruction on a lesser included offense cannot support a claim of ineffective assistance of counsel where, as here, the evidence does not reasonably raise the issue that [Johnson] may be guilty *only* of the lesser crime[]." *Ellis v. State*, 316 Ga. App. 352, 365 (8) (d) (729 SE2d 492) (2012). See also *Stillwell*, 329 Ga. App. at 111 (2) ("[T]he trial court is not required to charge the jury on a lesser included offense when the evidence shows either the commission of the offense charged in the indictment, or the commission of no offense at all."). Trial counsel was not ineffective for failing to request, in writing, a charge on attempted rape.

*Judgment affirmed. Doyle, P. J ., and Gobeil, J., concur.*